No. 45,163

THE SPRINGFIELD TENT & AWNING COMPANY, a Corporation, *Appellant*, v. RUSKIN RICE; H. L. SWARTZENDRUBER, MARGARET H. DUNLAP and JULIA ANN WARD, a Partnership, d/b/a LANGDON TENT & AWNING COMPANY and d/b/a LANGDON MANUFACTURING COMPANY, *Appellees*.

(447 P. 2d 833)

Opinion filed December 7, 1968.

*Gerald Sawatzky*, of Wichita, argued the cause, and *John E. Foulston*, of Wichita, and *George A. Schwer*, of Springfield, Ohio, were with him on the brief for the appellant.

No appearance for appellee Ruskin Rice.

*Terry O'Keefe* and *George W. Ball*, both of Wichita, argued the cause, and *Dale Kidwell, Jack H. Greene*, and *Kenneth M. Nohe*, all of Wichita, were with them on the brief for the appellee Langdon Manufacturing Company.

The opinion of the court was delivered by

HARMAN, C.: Plaintiff brought this action for damages against defendant Ruskin Rice for breach of a contract not to compete and against the remaining defendants for inducing and participating in that breach. Upon trial at the close of plaintiff's evidence the trial court directed a verdict in favor of defendants and plaintiff has appealed from that ruling.

The trial court based its ruling upon two grounds: The contract sued upon was invalid and unenforceable, and plaintiff's evidence failed to establish that defendants had caused plaintiff to sustain any damage.

Plaintiff is a small manufacturer of commercial and military canvas and canvas-type products at Springfield, Ohio. The business was commenced as an individual proprietorship by one Vernon McCoy. As it prospered it became a partnership with McCoy and his wife Marjorie, and then a corporation with the McCoys owning all the stock. In 1952 Vernon died and Marjorie became president of the company.

In 1954 defendant Ruskin Rice entered the employment of plaintiff company and he and Marjorie were married. In 1955 Rice became general manager of plaintiff and was in charge of its production and sales. A part of its business was as a subcontractor supplying specialized military canvas products under rigid specifications to prime contractors holding Department of Defense and Atomic Energy Commission contracts.

Marital trouble eventually developed between the Rices. As a result on September 15, 1962, Rice resigned his employment with plaintiff and he and Marjorie were divorced. As a part of the separation Rice entered into a written contract with plaintiff whereby Rice agreed, in consideration of payment to him of money and property totaling four thousand dollars, he would not compete directly or indirectly with plaintiff in any manner for a period of three years at any place throughout the United States, either as an individual or a member of another organization.

On October 22, 1962, Rice entered the employment of the three remaining defendants, who as partners under the Langdon company name in their plant at Wichita likewise manufacture and sell commercial and military canvas products. Rice remained in Langdon's employ until sometime early in 1964. Prior to and during Rice's employment by Langdon, Langdon competed in the same field with plaintiff in the manufacture and supply of military canvas products, and both companies were seeking to expand their operations.

As indicated, a crucial issue in the case was whether plaintiff's evidence showed causation by defendants of damage to plaintiff by way of loss of profits and diminished value of plaintiff's business. At this point it should be noted that, because of the following, trade secrets are not involved in this litigation. In March, 1963, soon

after plaintiff learned of Rice's employment with Langdon it sought in federal district court at Wichita to enjoin that employment. Injunctive relief was denied April 5, 1963. In the instant action the trial court held a pretrial conference as a result of which it entered an order providing in part:

"6. Some of the issues of fact decided by Judge Brown, in the case of Springfield Tent & Awning Company v. Ruskin Rice, *et al*, Civil Action No. W-2813, decided in the United States District Court for the District of Kansas are *res judicata* and cannot be relitigated in this action again. These issues of fact are as follows:

"(*a*) The suppliers of products for canvas fabricators are well known throughout the industry and there are no secret sources of materials or price advantage of one purchaser over another. The canvas fabricating business is highly competitive because of common sources of suppliers; similarity of methods in both production and sales and the elements of transportation costs. (Judge Brown's Finding of Fact No. 14.)

"(*b*) Rice does not possess any trade secrets whereby Springfield was enabled to maintain any advantage over its other competitors. (Judge Brown's Finding of Fact No. 15.)

"(*c*) Springfield has no trade secrets although there may have been a manner of doing business which might have been different from any of those of other canvas fabricators. Springfield did not show that its business was operated in a manner to keep out any persons wishing to visit their plant. (Judge Brown's finding of Fact No. 16.)

"(*d*) Springfield did prove that it made money in only two of the eight years Rice was connected with it and that its net worth was reduced from the time of his employment from $339,000 to $205,000 when he was terminated. (Judge Brown's Finding of Fact No. 17.)"

No appeal upon this point has been taken and plaintiff concedes trade secrets are not here involved.

Plaintiff offered the testimony of nine witnesses, including that of Marjorie and of a long-time employee of plaintiff. Its other witnesses included defendant Rice and employees of other companies engaged in the contracting of military canvas products. Plaintiff also offered much documentary evidence consisting of its own records and of correspondence and intra and inter-company records of Langdon dealing with its production and sales of military canvas products.

This evidence is lengthy and detailed and no attempt will be made to narrate it. It described the general method of operation usually carried on between prime contractors and subcontractors in the field of military procurement of canvas products, and particularly that carried on by plaintiff over a period of time with certain

prime contractors. Much of the documentary evidence dealt with Langdon's sales in the same area. Plaintiff sought to show that due to Rice's employment with Langdon plaintiff lost business with two prime contractors it would otherwise have had. The prime contractors are private corporations for profit and their subcontracts become highly competitive in their effort to get the best qualified bid at the lowest price.

Plaintiff being forced to go in part into an unfriendly camp in an effort to establish its contention, some of its evidence is contradictory, and the parties place widely varying interpretations on much that is undisputed. However, the rule is that on a motion for directed verdict the trial court does not weigh evidence but must accept as true all the facts which the evidence tends to prove and draw against the party making the motion all reasonable inferences most favorable to the party opposing the motion, and if the evidence is of such character that reasonable men in an impartial exercise of their judgment may reach different conclusions, then the case should be submitted to the jury (*Bingham v. Hillcrest Bowl, Inc.,* 199 Kan. 40, 427 P. 2d 591).

After reviewing the evidence in the light of the foregoing, we cannot say the trial court erred in its ruling. Such contradictions and inconsistencies as there were in the evidence were not on issuable or material facts. Giving plaintiff the benefit of all such, and all circumstances and the favorable inferences to be drawn therefrom, we think plaintiff's evidence raised no more than mere conjecture or speculation that defendants' actions damaged plaintiff during the period of Langdon's employment of Rice. To illustrate, in some instances Langdon later received from a prime contractor certain contracts upon which plaintiff had declined to bid at a time while Rice was still plaintiff's general manager, and in other instances in which the prime contractor never invited plaintiff to bid. Plaintiff would presume this loss of business in both instances to be the result of Rice's association with Langdon but we must regard the evidence urged in support of this proposition as purely surmise. Other similar examples could be recited. Plaintiff never made a competitive bid on any particular contract awarded to Langdon during the period in question; plaintiff would explain this by the occurrence of that which it labels a series of abnormalities and irregularities, ascribable to Langdon's use of Rice, but we think the explanation lies wholly within the realm of speculation. A key em-

ployee of plaintiff, who had intimate knowledge of its business affairs during the period in question, was unable to testify as to any loss of business by plaintiff to Langdon during the crucial time. Such lack of testimony would not, of course, be conclusive upon plaintiff upon motion for directed verdict but it illustrates the extremely tenuous nature of plaintiff's theory. Plaintiff contends the whole picture presents a situation wherein Langdon's cunning and surreptitious use of Rice and manipulation of others not connected with either company enabled Langdon to obtain a competitive edge once held by plaintiff to plaintiff's detriment. In our opinion this theory lacks tangible support in the evidence and is completely conjectural and speculative. Mere surmise or conjecture is insufficient to establish a cause of action. Nor may an inference be drawn upon an inference to establish liability (2 Hatcher's Kansas Digest, rev. ed., Evidence, § 346). This latter rule was interpreted in *Virginia Surety Co. v. Schlegel,* 200 Kan. 64, 434 P. 2d 772, as follows:

"What is meant by the rule forbidding the basing of one inference upon another is that an inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility." (Syl. ¶ 1.)

Plaintiff's evidence simply would not have supported a judgment in its favor. The trial court correctly ruled plaintiff's evidence failed to establish that defendants had caused damage to plaintiff. This issue is determinative and the judgment appealed from is affirmed.

APPROVED BY THE COURT.