No. 47,148

RODNIE SMITH, a minor, by his father as next friend, CHARLES W. SMITH, JR., *Appellant,* v. UNION PACIFIC RAILROAD CO., a corporation; and WILLIAM H. HAGEN and COLIN T. NORMINGTON, *Appellees.*

(519 P. 2d 1101)

Opinion filed March 2, 1974.

*Edwin P. Carpenter,* of Turner, Chartered, of Great Bend, argued the cause, and *Lee Turner* and *Eldon L. Boisseau,* of the same firm, were on the brief for the appellant.

*Charles D. McAtee,* of Eidson, Lewis, Porter & Haynes, of Topeka, argued the cause, and *O. B. Eidson,* of the same firm, *Steven P. Flood* and *Clayton S. Flood,* of Flood, Martin, Coffelt & Flood, of Hays, were with him on the brief for the appellees.

The opinion of the court was delivered by

FROMME, J.: This appeal stems from a jury trial which concerned a collision at a railroad crossing in the city of Palco, Kansas. Plaintiff was a passenger in a car driven by his mother and he suffered severe and permanent injuries. The train was being operated by the defendant William H. Hagen, engineer, and the defendant Colin T. Normington, conductor. Suit was filed on behalf of the plaintiff against the Union Pacific Railroad Company and against the employees who were operating the train. Negligence in the operation of the train was alleged. A jury absolved the railroad and both employees of any negligence in answers to special questions. The plaintiff appeals.

The city of Palco, population 600, is located on a branch line of the railroad in northwest Kansas. The railroad has imposed a maximum speed limit of 30 miles per hour (mph) on its trains while using this branch line because of the condition of the track. Plaintiff's mother was driving her vehicle in a westerly direction on Douglas Street and she approached the crossing at 10 to 15 mph. The train was approaching this crossing from the northwest at a speed of from 25 to 32 mph. The train's headlight and automatic bell ringer were on, the whistle was blowing, and there were no mechanical defects noted in connection was the engine. This was an open crossing without control devices, mechanical or otherwise.

As a motorist approaches the crossing from the east there is a visible crossbuck sign indicating two sets of track. The first set is the house track and the second, which lies further west, is the main track. As a motorist approaches from the east on Douglas Street there is a building to the right of the crossbuck sign. The corner of the building obstructs the reciprocal line of sight between a motorist and a crew member operating a train until the automobile has reached a point 90 feet from the main track. At that point a motorist has unlimited vision of the track to the northwest. There was testimony that a motorist traveling at 15 mph could stop a car well within 90 feet. Mrs. Smith, the driver of the car, had lived in Palco for seven years.

The collision occurred at 1:07 p. m. on February 12, 1969. Plaintiff's mother did not see or hear the train until just before impact. There was evidence from which the jury might find there was no way the train crew could stop the train at the speed it was traveling in time to avoid the collision after the car first came into view. This was essentially a fact case which went to the jury and the jury absolved the defendants of negligence, so we need not labor the sufficiency of the evidence.

The plaintiff in seeking a new trial urges various points of error on appeal. We will consider these points and fill in what facts are necessary as we go along.

Plaintiff asked for a new trial on the ground of misconduct of the jury and of the parties. He alleged in his motion that the defendants Hagen and Normington talked to some of the jurors during a recess in the trial and thereby deprived plaintiff of a fair trial.

At the hearing on the motion plaintiff elicited testimony from

William James Rogers who testified he overheard the defendants Hagen and Normington make statements within the hearing of members of the jury during a trial recess to the effect that defendants were only doing their job, that they were just common people doing their job when they got hit and now were being sued and taken to trial, that they couldn't understand why they were here, that a decision against the railroad would probably result in their jobs and that they would be ruined financially.

William James Rogers was a 21 year old client of plaintiff's attorney. Rogers had been injured in another accident and was currently being represented by plaintiff's attorney in a pending lawsuit. Rogers testified that his attorney decided it would be a good idea for him to come and learn what a trial was all about, so he was present during the first week of trial when the incident was alleged to have taken place.

Normington, Hagen and Hagen's wife testified in response to the testimony of Rogers that no such statements were made during this time.

The trial judge listened to all of the testimony and in ruling on the motion said:

"With reference to James Roger's affidavit, and all testimony in connection therewith, the Court finds there is no showing of any misconduct on the part of the jury, or jurors, or parties to this litigation which could have any effect on the deliberations of the jury and could have no effect on their deliberations and their outcome. The same is unsubstantiated by any corroborating evidence and that there is no showing it is prejudicial in any way. . . ."

K. S. A. 1973 Supp. 60-259 (a) authorizes the granting of a new trial on all or a part of the issues when it appears that the rights of a party have been substantially affected by misconduct of the jury or of a party, or the verdict was procured by the corruption of the party obtaining it. The trial court has a wide discretion in this area. This court on appeal will not reverse an exercise of judgment by a trial court which depends upon the credibility of witnesses who testify on a motion for new trial. A clear abuse of judicial discretion is necessary for a reversal. (Timmerman v. Schroeder, 203 Kan. 397, 400, 454 P. 2d 522; Sulkis v. Zane, 208 Kan. 800, 802, 494 P. 2d 1233.) There can be no abuse of judicial discretion if a court listens to conflicting evidence on the subjects of misconduct of the jury and of corruption of a party and con-

scientiously finds from the evidence that such misconduct or corruption was not established.

The second point concerns a similar claim of misconduct of a juror. It was also based upon the testimony of William James Rogers introduced on the motion for new trial.

The trial was lengthy and covered ten full days during the last of May and the first part of June. During the latter part of the trial plaintiff's counsel spent considerable time reading depositions to the jury. At one of the periods of recess a juror by the name of Markwell expressed dissatisfaction in the time being consumed in hearing the case. Witness Rogers described Markwell's expression as a "violent temper eruption". The appellees suggest that this is a gross overstatement totally unsupported by other evidence. However, it appears that the juror did seek out the judge in chambers and complained to him about the length of the trial. The attorneys were then called into chambers and the judge suggested to the attorneys that the juror could be excused if the parties would agree to try the case to the remaining eleven jurors. The appellees refused, which was their right and the trial continued without objection by plaintiff. It was not until after the adverse verdict that plaintiff-appellant registered his complaint over the incident.

In *Nelson v. Hardesty*, 205 Kan. 112, 468 P. 2d 173, it is held:

"Where a party or his counsel has knowledge of the act or occurrence complained of, the failure to bring it to the court's attention or to request remedial action until after a verdict is returned, operates as a waiver thereof as a ground for a new trial." (Syl. ¶ 2.)

It is true in the present case the court was made aware of the incident, but the appellant, aware of the incident, saw fit not to request remedial action until after a verdict was returned. Under *Nelson* this might be held a voluntary choice and waiver precluding consideration of the incident as a ground for new trial. Here, the trial court specifically found there was no showing that the incident had any affect on the deliberations of the jury or on the outcome of the case. The trial court knew of the incident first hand and heard further evidence on the motion for new trial. The court's determination that plaintiff's rights were not prejudicially affected was a discretionary judgment which we decline to reverse on appeal. No abuse of discretion has been shown.

Appellant's third point on appeal concerns the problem of sleeping jurors. The contention of appellant was again supported

on argument of the motion for new trial by the testimony of William James Rogers but his testimony was further buttressed by affidavits. In ruling on the motion, the court recalled but one such incident at which time he announced a recess to alleviate the juror's drowsiness. The court found this had no significant effect on the outcome of the trial and no showing of prejudice was made. The court noted that none of the attorneys made any request concerning sleeping jurors during the trial. The rule in *Nelson v. Hardesty*, supra, is applicable. See also *State v. Jones*, 187 Kan. 496, 357 P. 2d 760, and *State v. Kimmel*, 202 Kan. 303, 448 P. 2d 19, where similar contentions concerning sleeping jurors are discussed. The trial court can better determine whether the irregularity charged had prejudicial effect upon the substantial rights of the appellant, and no abuse of discretion appears in the record.

Appellant's fourth, fifth and sixth points of error concern instructions given by the trial court. Appellant does not contend any of the instructions were erroneous statements of the law. He argues that certain instructions should not have been given under the facts of this case. Twenty separate instructions were given. The instructions here questioned are as follows:

No. 10. (defining proximate cause and stating there may be more than one proximate cause);

No. 11. (defining negligence generally);

No. 12. (defining contributory negligence generally);

No. 13.

"You are instructed that any negligence or contributory negligence, if any, of the plaintiff's mother Shirley Smith in the operation of the automobile, cannot be imputed to the minor plaintiff Rodnie Smith, and cannot be considered as negligence or any fault of Rodnie Smith.

"Rodnie Smith, age five at the time, was entitled to rely on the driver's operation of the car without imputing the driver's negligence, if any, to the plaintiff passenger.

"With respect to the suggestion of contributory negligence, you are instructed a child under seven years of age is conclusively presumed to be incapable of contributory negligence.

"Therefore, you are instructed that Rodnie Smith, being five years of age at the time of the collision, was free from negligence or contributory negligence."

No. 14. (setting forth the duties of the railroad and its employees with regard to the issues raised at the trial); and

No. 15.

"It is the duty of one driving an automobile upon a public highway, in the exercise of reasonable and due care, to look ahead and see vehicles

and objects in the line of his vision, and in case of an accident, he will be conclusively presumed to have seen what he could and should have seen in the exercise of reasonable and ordinary care under the facts, conditions and circumstances then and there existing."

At the trial appellant requested two instructions, one on non-imputation of negligence, and the second on concurrent causes which combine to produce an injury. The court submitted its instructions to counsel beforehand, together with forms for special questions. Before submitting the same to the jury the court asked: for objections of counsel. Plaintiff made but one objection which was as follows:

"MR. TURNER: Plaintiff has one objection and that is to instruction number fifteen on the duty of the driver of an automobile and we object on the ground and for the reason that that is not an issue under the facts in this case. The duty of the driver of the vehicle is on Shirley Smith and she is not a party to this case. Rodnie Smith, the passenger, is incapable of negligence and there can be no imputation of negligence of Shirley Smith to Rodnie. The negligence of Shirley Smith is not an issue in this case."

This objection was overruled by the court.

K. S. A. 60-251 (*b*) states:

"(*b*) *When waived.* No party may assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict stating distinctly the matter to which he objects and the grounds of his objection unless the instruction is clearly erroneous. Opportunity shall be given to make the objections out of the hearing of the jury."

Under the limitation imposed by this statute we will confine our discussion to the one objection made by appellant which relates to giving instruction No. 15. This instruction was a general "due care" instruction relating to the driver of the automobile. It was not an erroneous statement of law. Instruction No. 13 clearly stated that any contributory negligence of the mother could not be imputed to the 5 year old passenger. The jury was instructed that the plaintiff must be considered free from negligence or contributory negligence. Regardless of non-imputation of negligence, due care on the part of the driver of the automobile and the due care instruction were necessary and proper to determine the question of proximate cause. In addition, the jury's answers to special questions absolved the defendants of any negligence which was a proximate cause of the collision. Therefore the case was determined on the issue of lack of negligence of the defendants.

What is said in *Staudinger v. Sooner Pipe & Supply Corporation,*

208 Kan. 100, 490 P. 2d 619, applies to appellant's contention in the present case. In *Staudinger* we say:

"A case on appeal will not generally be reversed on exceptions to instructions which do not relate to the issue upon which the cause was determined and an error in failing to instruct a jury on the issue of imputation of negligence to a plaintiff is harmless and not prejudicial to plaintiff when there is a jury finding that defendant was not guilty of negligence." (Syl. ¶ 8.)

The court below did not fail to instruct on non-imputation of negligence in our present case but the rule of law would equally apply to error such as an instruction defining contributory negligence or the duty of the driver. See *Worden v. Tri-State Insurance Company*, 347 F. 2d 336 (10 CA) and cases cited in *Staudinger* at page 110. Considering the instructions as a whole, and in light of the answers to special questions absolving defendants from negligence, we can find no prejudicial error in the instructions which would justify reversal.

Appellant's next contention of error, based on failure to submit instructions requested by him, is covered by what is said in *Bott v. Wendler*, 203 Kan. 212, 453 P. 2d 100, as follows:

"There is nothing in the record to indicate the defendants ever made any objection of the district court's refusal to submit the requested instructions as required by 60-251 (*b*). A party may not complain of error on the part of the district court in failing to give a requested instruction unless *after* the request is denied but *before* the jury retires to consider its verdict, he states 'distinctly the matter to which he objects and the grounds of his objection,' unless the instruction is clearly erroneous. (*Marshall v. Nugent*, 222 F. 2d 604.) The purpose of the statute is to afford the district court an opportunity upon second thought, and before it is too late, to correct an inadvertant or erroneous failure to instruct the jury on the law applicable to the issues. The statute also serves to lessen the burden of an appellate court by diminishing the number of rulings at the trial which it may be called upon to review. (3 Vernon's *op. cit., Supra,* § 60-251.2, p. 250; Gard, *op. cit., Supra,* § 251, pp. 237-239.) . . ." (p. 222.)

Appellant argued on the motion for new trial, and now argues on appeal, that the instructions were not clear to some of the jurors. He introduced affidavits, one signed by a juror and others by investigators for appellant. These affidavits contained statements indicating that the instructions were not clear and were confusing to some of the jurors.

As to the affidavit of the juror, it was not admissible for it is an attempt to impeach and overthrow the verdict. Impeachment of the verdict was explained in *Perry v. Bailey*, 12 Kan. 539, where it is held:

"The general rule is, that affidavits of jurors are admissible to explain and uphold their verdict, but not to impeach and overthrow it. But this general rule is subject to this qualification, that affidavits of jurors may be received, for the purpose of avoiding a verdict, to show any matter occurring during the trial, or in the jury room, which does not essentially inhere in the verdict itself, as, that a juror was improperly approached by a party, his agent, or attorney, or that the verdict was determined by lot; but not to show any matter which does essentially inhere in the verdict, as that the juror did not assent to the verdict, that he misunderstood the instructions, or the testimony, or any other matter resting alone in the juror's breast." (Syl. ¶ 3.)

See also *Milling Co. v. Edwards,* 108 Kan. 616, 620, 197 Pac. 1113; *Kincaid v. Wade,* 196 Kan. 174, 410 P. 2d 333; *State v. Schroeder,* 201 Kan. 811, 822, 443 P. 2d 284; and *Hogue v. Kansas Power & Light Co.,* 212 Kan. 339, Syl. ¶ 3, 510 P. 2d 1308.

This rule is now recognized in the Code of Civil Procedure where it is said:

"Upon an inquiry as to the validity of a verdict or an indictment no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him to assent to or dissent from the verdict or indictment or concerning the mental processes by which it was determined." (K. S. A. 60-441.)

The "hearsay" affidavits of the investigators for appellant were likewise inadmissible for impeachment purposes. In addition we wish to note, the practice of sending investigators to harass or embarrass the jurors after discharge, if such was the case, cannot be condoned. The Code of Professional Responsibility in part provides:

"DR 7-108  Communication with or Investigation of Jurors.

.   .   .   .   .   .   .   .   .   .   .   .   .

"(D) After discharge of the jury from further consideration of a case with which the lawyer was connected, the lawyer shall not ask questions of or make comments to a member of that jury that are calculated merely to harass or embarrass the juror or to influence his actions in future jury service.

"(E) A lawyer shall not conduct or cause, by financial support or otherwise, another to conduct a vexatious or harrassing investigation of either a venireman or a juror.

"(F) All restrictions imposed by DR 7-108 upon a lawyer also apply to communications with or investigations of members of a family of a venireman or a juror." (Rules of the Supreme Court of Kansas, Rule No. 501, DR 7-108, 209 Kan. lxxxvii.)

For appellant's seventh point of error he complains that he was unduly restricted in making his final argument concerning the testimony of one of defendant's witnesses (McNealy). The testimony of this witness concerned a speed tape which purported to

show the speed of the train at 32 mph. The witness testified that the speed tape was a 120 mph speed tape being used in a 95 mph recorder, and that a transparent, overlay conversion-chart had to be used to determine the correct speed the train was traveling. This testimony was stricken by the trial judge when the railroad company was unable to produce records during the trial on this particular train. The jury was instructed to disregard the testimony of the witness. The testimony of this witness was not, therefore, before the jury and counsel's comments on the evidence were improper. The closing argument and ruling was as follows:

"[Mr. Turner:] Here is the speed tape. They have got plenty of people that can read that tape. They can interpret that tape and tell you precisely what speed they were traveling at the time of the accident on that particular day. You remember Mr. McNealy who came in here and testified and the evidence showed that he testified falsely.

"Mr. McAtee: If the Court please, the Court has instructed the jury concerning Mr. McNealy's testimony but I am certain the Court has not instructed the jury that he testified falsely.

"The Court: Counsel shall remain fairly within the evidence. Please proceed.

"Mr. Turner: Mr. McNealy testified and said that he would have evidence to show that what he testified to was true. He said it was immediately available and we waited three days and no such evidence. You can rest assured that if the evidence was as he said it was, that the proof would have been here or on the contrary if the evidence didn't show it, then the evidence wouldn't be produced. So it is up to you to determine whether or not he testified falsely or truthfully. There is one fact you should remember that he said that this speed tape, the original, has been in their control all of this time. You can rest assured that if it supported what he said the speed was that you would have been afforded the benefit of the speed at this precise point, if the speed tape supported their testimony."

It is apparent that appellant's argument was improper since it related to matters stricken from the evidence but, even beyond that, appellant did not limit his comments. He continued the argument. He is not now in a position to claim error in regard to any limitation.

In *Taylor v. F. W. Woolworth Co.*, 151 Kan. 233, 98 P. 2d 114, it is said:

". . . This court has consistently followed the general rule against imposing narrow and unreasonable limitations upon argument of counsel made to the jury. Counsel are entitled to comment freely upon the evidence, upon the credibility of witnesses where such comment is based upon facts appearing in the evidence, and to state their own views concerning the evidence. But countenance is not to be given to arguments based in no way upon the evi-

dence or to appeals outside the record manifestly intended to create passion and prejudice on the part of the jury. . . ." (p. 241.)

The eighth point of error urged by appellant is that the trial court erred in limiting his final argument that payment of any judgment would be the responsibility of the railroad and not of the individual defendants. He attempts to justify such argument on the ground that counsel may properly argue and comment on self-evident facts and matters of common knowledge, a questionable justification.

The argument to the jury, the objection and the court's ruling on this matter are as follows:

"Now remember this and understand this: Mr. Hagen and Mr. Normington are employees and are under the control of the Union Pacific Railroad and personally have very little at stake here. But not with regard to money. The railroad is responsible for the payment of whatever your verdict is in this particular case.

"MR. McATEE: Object, your Honor. Counsel knows that is not true.

"THE COURT: Overruled. Please proceed.

"MR. TURNER: The railroad is responsible for the acts of its agents, servants and employees totally and completely. I will illustrate that to you in this regard. That a corporation is not a person."

As can be seen from the above statements appellant was not limited in this argument. The objection was overruled. The point is patently without merit.

The ninth point of error concerns the refusal of the trial court to permit the deposition of the defendant William H. Hagen to be read in evidence to show admissions made against interest. The trial court's ruling in this regard was error. In the recent case of *Mesecher v. Cropp*, 213 Kan. 695, 518 P. 2d 504, this question is thoroughly discussed and we iterate what is said in that case:

"The applicable statute was K. S. A. 60-226 (*d*) (now K. S. A. 1973 Supp. 60-232 [*a*]):

" '(*d*) *Use of depositions.* At the trial . . . any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof, in accordance with any one of the following provisions:

. . . . . . . . . . . . .

" '(2) The deposition of a party . . . may be used by an adverse party for any purpose. . . .

. . . . . . . . . . . . .

" '(4) If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts.'

"In *Aspelin v. Mounkes,* 206 Kan. 132, 476 P. 2d 620, we held:

" 'A deposition of a party containing an admission against interest is admissible regardless of whether the party is present at the trial or absent from the jurisdiction.' (Syl. ¶ 3.)

"In the course of that opinion it was said:

" '. . . In *Taylor v. Maxwell,* 197 Kan. 509, 419 P. 2d 822, we pointed out that K. S. A. 60-226 (*d*) (2) specifically authorizes the use by an adverse party, for any purpose, of a deposition of a *party,* without regard to the limitations applicable generally to the deposition of witnesses offered by either party.' (P. 138.)"

However, the error cannot be prejudicial when considered in light of the present record. The trial court permitted full use of the deposition on the cross-examination of Mr. Hagen. Appellant's counsel conducted an extensive cross-examination. Throughout the course of the examination counsel referred extensively to the answers given in the deposition. It is apparent that the "admissions against interest" were fully explored and the jury was fully advised of any discrepancies in the deposition testimony. The error in excluding the deposition was rendered harmless by these later events.

In conclusion appellant contends the defendants were guilty of negligence as a matter of law and the court erred in refusing to grant appellant's motion for a directed verdict at the close of his evidence and at the close of all the evidence.

The rule in *Becker v. Rolle,* 211 Kan. 769, 508 P. 2d 509, provides:

"On appeal in a civil action an appellant, who seeks review of an alleged erroneous ruling of the trial court, is obligated to designate a record sufficient to present the matter." (Syl. 4.)

The record submitted to this court fails to show that a motion for a directed verdict was made. Appellant is precluded from presenting the question. However, if the point were properly presented to this court, what is said in *Libel v. Corcoran,* 203 Kan. 181, 452 P. 2d 832, would be applicable. There it is said:

"This is essentially a fact case. Appellant's principal contentions upon appeal in effect ask us to reweigh those facts in the light of any conflict or inconsistency shown in the evidence. This, of course, is beyond the scope of our review, which is simply to ascertain whether the trial court's findings are supported by substantial competent evidence. In making this determination we are required to consider the evidence in its most favorable aspect to the party who prevailed in the court below (*Frame, Administrator v. Bauman,* 202 Kan. 461, 468, 449 P. 2d 525)." (p. 183.)

Having considered all points properly presented on appeal the judgment is affirmed.