No. 48,219

Wilbur Webber, A Minor, by and Through His Next Friend, Shirley Witwer, *Appellee,* v. Ron Patton, *Appellant.*

(558 P. 2d 130)

Opinion filed December 11, 1976.

*Charles F. Forsyth* and *Clark M. Fleming,* both of Erie, were on the brief for the appellant.

*Robert L. Eastman, Richard L. Becker,* and *Morris D. Hildreth,* all of Coffeyville, were on the brief for the appellee.

*Per Curiam:* This is an action for damages for personal injuries arising out of an assault and battery, and for damages sustained by plaintiff when his bred gilt was attacked by defendant's dogs. A jury returned a verdict for plaintiff for compensatory damages of $63.63 and punitive damages of $1750. Defendant appeals.

The issues are whether the trial court erred in failing to grant a new trial because of misconduct of the jury; in admitting evidence as to damages to the hog; and in submitting the issue of punitive damages to the jury in the absence of evidence of actual damages.

The plaintiff, Wilbur Webber, fifteen years of age, lived on a farm·in Montgomery County with his sister, Shirley, and her husband, Fred Witwer. In September, 1973, plaintiff purchased a registered Berkshire bred gilt as an FFA project. In the early morning hours of September 25, 1973, Fred Witwer was awakened by the sounds of dogs barking and a pig squealing. He loaded his shotgun and went to the door of the barn from whence the noise came. Two animals ran out the door and he shot them. At that time he did not know whether they were dogs or coyotes. He then turned on the headlights of his car and discovered that the animals were large boxer type dogs. They had blood all over their mouths. Inside the barn he found the gilt, which had sustained several serious wounds. He then roused the plaintiff who treated the wounds and called a veterinarian.

Later that morning plaintiff learned that the dogs were similar to the dogs owned by Ron Patton. Webber went to Patton's home and related the incident to him. Patton knocked plaintiff down, grabbed him by the hair and pulled him to his feet, pulling out a handful of hair in the process, and told plaintiff to get in his car

and get out of there. Plaintiff complied. Plaintiff's evidence was that he suffered pain and incurred medical expenses of $7 as a result of the battery. He incurred veterinary expense of $26.63 for care of his hog, and $40 for loss of the animal. After the attack, the hog was no longer suitable for use in the FFA project and was returned to the seller from whom another gilt was purchased. Plaintiff also sought $2000 as punitive damages.

With reference to alleged misconduct of the jury, defendant claims that one of the jurors, Clayton, did not tell the truth when he denied knowing Fred Witwer on *voir dire*. It appears that Witwer had been a member of the same venire, and sat as a member of two jury panels with Clayton prior to the trial of this case. Further, the defendant's father-in-law testified upon the hearing of the motion for new trial that before the *voir dire* he was sitting in the courtroom near Mr. Clayton and heard him express the opinion that Patton should go ahead and pay what Webber was asking because he had the money and it would not bother him to pay it.

The juror testified that his only knowledge of Fred Witwer was through his association of being on the jury. He denied making the statement attributed to him by Patton's father-in-law.

The record shows that counsel for the defendant, at the time of the *voir dire*, was aware that Fred Witwer was to be a witness for the plaintiff, and that Witwer had been serving on the jury panel. The trial court heard the testimony of the juror and of defendant's father-in-law, determined that substantial misconduct was not established, and denied the motion for new trial.

The question of whether a juror is disqualified because he has formed or expressed an opinion on the case must be decided on the facts of the particular case, and the trial court's findings will not be disturbed on appeal in the absence of a clear abuse of discretion. *State v. Williams*, 182 Kan. 468, 322 P. 2d 726. The law on the issue of whether a new trial should be granted on the ground of jury misconduct was recently outlined in *Smith v. Union Pacific Railroad Co.*, 214 Kan. 128, 519 P. 2d 1101, where we said:

"K. S. A. 1973 Supp. 60-259 (*a*) authorizes the granting of a new trial on all or a part of the issues when it appears that the rights of a party have been substantially affected by misconduct of the jury or of a party, or the verdict was procured by the corruption of the party obtaining it. The trial court has a wide discretion in this area. This court on appeal will not reverse an exercise of judgment by a trial court which depends upon the credibility of witnesses who testify on a motion for new trial. A clear abuse of judicial discretion is necessary for a reversal. (Citing cases.) There can be no abuse

of judicial discretion if a court listens to conflicting evidence on the subjects of misconduct of the jury and of corruption of a party and conscientiously finds from the evidence that such misconduct or corruption was not established." (pp. 130, 131.)

Under the circumstances here disclosed we cannot say that the trial court abused its discretion.

Next we turn to the receipt of evidence of damages for the loss and care of the hog. The petition made claim for such damages. The pretrial order specified as an issue of fact the amount of damages sustained by the plaintiff, if any. A check made to the veterinarian and receipts from the Lakeside Berkshire Farm from which the original and the replacement hogs were purchased were marked and identified as exhibits during the pretrial conference. We conclude that loss of value of the hog and the cost of veterinary services were within the issues delineated by the pleadings and set forth in the pretrial order. More importantly, appellant did not object to such evidence and under the contemporaneous objection rule, waived his right to complain that the introduction of this evidence was erroneous. K. S. A. 60-404; *State v. Carter*, 220 Kan. 16, 551 P. 2d 821. The verdict in this area can also be supported by the provisions of K. S. A. 47-645, which make the owner of a dog liable for damage it inflicts upon domestic animals, although that statute was not relied upon by appellee.

We turn to appellant's final contention that the court erred in submitting the issue of punitive damages to the jury in the absence of evidence of actual damages, and in failing to set aside the award of punitive damages because it was not supported by the evidence. Before punitive damages may be awarded, a plaintiff must establish a right of recovery of actual damages. *Watkins v. Layton*, 182 Kan. 702, 706, 324 P. 2d 130. Here, as pointed out above, plaintiff did establish his right to recover actual damages for his pain, suffering and medical expenses, and for the loss of value and treatment of his hog. Though these amounts were small, they constitute actual damages.

The extent of appellate review of an award of punitive damages is outlined in the case of *Langley v. Byron Stout Pontiac, Inc.*, 208 Kan. 199, 491 P. 2d 891:

"When a charge of excessive verdict is based on passion or prejudice of the jury and depends for support solely on the amount of the verdict, the trial court will not be reversed for refusing a new trial unless the amount of the verdict in the light of the evidence shocks the conscience of the appellate court." (Syl. 2.)

Here there is substantial competent evidence, from the appellant's own testimony, that he acted in willful and wanton disregard for the rights of Webber. In the light of this evidence, the amount of the punitive damages awarded was not excessive.

Finding no error, we affirm the judgment of the district court.