No. 49,160

MARCIA A. TRAYLOR, *Appellee,* v. MILLARD A. WACHTER and EM-
CASCO INSURANCE COMPANY, *Appellants.*

(607 P.2d 1094)

Opinion filed March 1, 1980.

*Jack H. Greene,* of Greene & Kennedy, of Wichita, argued the cause and *David W. Kennedy,* of the same firm, was with him on the brief for appellant Millard A. Wachter.

*Mark F. Anderson,* of Kidwell & Williamson, Chartered, of Wichita, argued the cause, and *Daniel C. Bachmann,* of Bachmann, Arnold & Graybill, of Wichita, was with him on the brief for appellant Emcasco Insurance Company.

*Gerald W. Scott,* of Matlack, Foote, Scott, Joseph & Wilkinson, P.A., of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

McFARLAND, J.: On December 20, 1973, automobiles owned and driven by plaintiff Marcia A. Traylor and defendant Millard A. Wachter collided in Wichita, Kansas. Defendant Emcasco Insurance Company is the insurer of Mr. Wachter. In April, 1975, plaintiff filed suit seeking:

Count 1 — compensatory damages against Wachter for the collision; and

Count 2 — compensatory and punitive damages against both Wachter and Emcasco for alleged tortious conduct in the handling of her claim.

On trial the jury awarded plaintiff the following: Count 1 — $55,000 compensatory damages against Wachter; and Count 2 — $50,000 punitive damages against Wachter and $100,000 punitive damages against Emcasco. The jury was polled and discharged.

Both defendants appeal. The issues relate solely to Count 2. The verdict reached in Count 1 is unchallenged and is not before us for appellate review.

ISSUE NO. 1:   Did the trial court err in denying Wachter's motion to alter, amend or reform the verdict?

Defendant Wachter contends the $50,000 punitive damage award against him in Count 2 was a mistake and that the jury intended said award to be a $50,000 compensatory damage award against defendant Emcasco. The trial court overruled Wachter's motion to amend the verdict. The Court of Appeals, in its opinion (*Traylor v. Wachter,* 3 Kan. App. 2d 536, 540-41, 598 P.2d 1061 [1979]), summarized the situation as follows:

"Wachter first contends the trial court erred in denying his post-trial motion to amend, the recognized purpose of which was to correct the written verdicts to reflect what is claimed to have been the true verdicts of the jury. Wachter does not attack the actual damages verdict against him on plaintiff's first claim. Although within its other arguments the insurer attacks that verdict obliquely, Wachter's individual interests were separately represented by personal counsel at trial. Under the circumstances of this case, the insurer has no standing to challenge that verdict.

"The events of post-trial contacts and communications between the jury and the court, counsel for Wachter, counsel for the insurer, and a representative of the insurer need not be detailed. In support of his motion to amend, Wachter presented the affidavits of nine of the jurors and the live testimony of the other three jurors. The twelve jurors unanimously stated that their true verdicts were that plaintiff recover $55,000 actual damages against Wachter on her first claim, plaintiff recover no damages against Wachter on her second claim, plaintiff recover $50,000 actual damages against the insurer on her second claim, and plaintiff recover $100,000 punitive damages against the insurer on her second claim. The jurors agreed their verdicts were mistakenly recorded on the verdicts form.

"As the motion to amend was brought before and presented to the court, it was in the nature of a request by a party, Wachter, for a verdict correction and not a change sought by one or more jurors.

"Without abandoning alternative arguments, plaintiff agrees with Wachter that judgments should have been entered, not according to the verdicts form, but according to the true verdicts as established by the jurors' affidavits and testimony.

"The trial court confirmed its entry of judgments in accord with the verdicts form. Change was declined on the ground the motion to amend and the presentation of the jurors' affidavits and testimony constituted an impermissible attempt to impeach the written jury verdicts."

The Court of Appeals then concluded the trial court erred in overruling Wachter's motion to amend. We do not agree.

K.S.A. 60-248(g) (amended in 1978, but amendments not relevant herein) provides:

"(g) *Form of verdict; correction.* The verdict shall be written, signed by the foreman, and read by the clerk to the jury, and the inquiry made whether it is their verdict. If any juror disagrees, the jury must be sent out again; but if no disagreement be expressed, and no party requires the jurors to be polled individually, the verdict is complete, and the jury discharged from the case. If, however, the verdict be defective in form only, the same may, with the assent of the jury, before they are discharged, be corrected by the court."

The statute provides the means for correcting errors in the form of a verdict. Wachter characterizes the verdict against him as the result of a scrivener's error. The correction of such an error must occur before the jury is discharged and with the assent of the jury.

After discharge the jury no longer exists. Individuals who served on the jury are former jurors—not a jury. The trial court reached the right result for the wrong reason when it overruled the motion on the ground that it was an attempt to impeach the jury's verdict contrary to K.S.A. 60-441. To impeach a verdict is to invalidate a verdict and thereby gain a new trial, as no valid verdict had been reached. Amendment, correction, or reformation of a verdict may not be accomplished by impeachment. We must conclude that the trial court did not err in overruling Wachter's motion to alter, amend, or reform the verdict.

ISSUE NO. 2: Did the trial court err in concluding that the compensatory damages awarded against Wachter in Count 1 were a sufficient foundation for the award of punitive damages against both Wachter and Emcasco in Count 2?

The cause of action stated in Count 1 was personal injury and property damage suffered by plaintiff as a result of Wachter's negligent operation of his automobile. The cause of action stated in Count 2 was aptly described by the Court of Appeals as a "mixed bag claim" mingling negligence, malice, and fraud; but the cause of action does not include Wachter's negligent operation of his automobile. This count relates solely to alleged wrongdoings of Emcasco in its handling of the matter. We note that the separation into counts of the various allegations is not found in the petition, but evolved through pretrial order, trial and instructions. For our purposes it is sufficient to consider the causes of action as having been clearly separated and defined throughout the proceedings.

Before punitive damages may be awarded, a plaintiff must establish a right to recovery of actual damages. *Webber v. Patton,* 221 Kan. 79, 81, 558 P.2d 130 (1976). Punitive damages are imposed by way of punishing a party for malicious or vindictive acts or for a willful and wanton invasion of another party's rights, the purpose being to restrain him and to deter others from the commission of like wrongs. *Henderson v. Hassur,* 225 Kan. 678, Syl. ¶ 9, 594 P.2d 650 (1979). The conduct giving rise to the punitive damages claim must be the same conduct for which actual or compensatory damages were allowed. Where two separate causes of action are tried, arising from different factual situations and different theories, recovery of actual damages in

one cause of action is insufficient to permit recovery of punitive damages in the second cause of action. Before punitive damages could be awarded against Emcasco to punish it for the way it handled the claim, the plaintiff must recover actual or compensatory damages for the wrongful acts of the insurance company. No such recovery occurred and the $100,000 award of punitive damages against Emcasco cannot stand.

The $50,000 punitive damages award against Wachter also fails on the same rationale. In Count 1 a verdict for compensatory damages was entered against Wachter for his negligent operation of his automobile. This is a wholly separate cause of action from Count 2, which arises from the handling of the claim by his insurer (Emcasco). Additionally, evidence was wholly lacking to establish any liability on the part of Wachter for the acts of Emcasco which spawned Count 2, as will be set out in the next issue. We conclude that the verdicts awarding punitive damages against both Wachter and Emcasco must be set aside.

ISSUE NO. 3:    Should judgment be entered for defendants on Count 2 or should the matter be remanded for new trial?

In making this determination we must review the facts and legal theories involved in Count 2. The accident occurred on December 20, 1973. On the afternoon of the day after the accident, plaintiff went to a local hospital. She was examined by an emergency room physician, given pain medication, instructed to see her personal physician, and released without having been admitted. She returned to her home, telephoned her physician, and made an appointment for January 2, 1974.

On December 26, 1973, a claims employee of the insurer contacted plaintiff by telephone. He advised her he represented Wachter's insurer. The insurer's records reflect that the claims man learned plaintiff was "having back problems and still under doctor's care"; and no estimate had yet been made of her car repair cost. Plaintiff testified this claims man told her to send to the insurer any medical bills she had and he suggested she take her Pontiac automobile to Scholfield Bros. Pontiac, Inc., a local automobile dealership, for a repair estimate. As per Emcasco's request, plaintiff secured an estimate from Scholfield and advised Emcasco of the amount.

After inspecting the vehicle at Scholfield, Joe Brannon, another

claims employee of defendant, spoke with plaintiff by telephone on December 27 or 28, seven or eight days after the accident. The evidence of what plaintiff and Brannon said to one another is conflicting and confusing. Without reiteration, their testimony is capable of three interpretations: (1) Nothing but repair of plaintiff's car was discussed; (2) it was then orally agreed that plaintiff released defendants from all claims of plaintiff arising out of the accident in consideration of the insurer's promise to pay the car repair cost and plaintiff's medical expenses incurred within one year of the accident but not to exceed $2,000; and (3) upon plaintiff's execution of a written release it would be agreed that plaintiff released defendants from all claims in consideration of the insurer's promise to pay the car repair cost and plaintiff's medical expenses incurred within one year of the accident but not to exceed $2,000. In any event, Emcasco authorized plaintiff to proceed with the repairs, based upon the estimate she provided.

Repairs on the Traylor automobile were completed on January 11, 1974. Brannon and plaintiff had a conversation that day relative to setting up a time when the two would meet at Scholfield. Brannon had a draft for repair of the Pontiac and a written release, both of which were to be signed prior to plaintiff's picking up her automobile. The written release included the one-year limitation on medical expenses. Plaintiff knew some kind of release was involved, as she testified she understood it was to be for property damage only. The schedules of Brannon and plaintiff did not coincide, with the result that Brannon left the draft and release at Scholfield's for signatures. When plaintiff went to Scholfield to pick up her automobile, only the draft was presented to her for signature. She endorsed the same and received her vehicle.

Within a few days thereafter, Cynthia Stark, a Scholfield employee, was putting together the paperwork to send to Emcasco and noticed the unsigned release. Without contacting either plaintiff or Emcasco, Ms. Stark forged plaintiff's name on the release and routinely forwarded it to Emcasco. The forged release was placed in Emcasco's claim file. Matters proceeded uneventfully until the year for payment of medical expenses passed. After the expiration of the year, plaintiff submitted another medical expense bill (December of 1974 or January of 1975). Brannon declined payment, advising plaintiff that Emcasco had no further

obligation pursuant to the release. Plaintiff denied execution of a release, advised Brannon she had an attorney, and asked for a copy of the release. Brannon advised her that if her attorney requested a copy then such would be provided. Such request was made on February 21, 1975, and the copy was sent on February 26. No further communications were had until the filing of suit on April 28. Shortly after suit was filed, Emcasco contacted Scholfield and learned of the forgery. At all times after learning from Scholfield of the forgery, Emcasco has acknowledged that it is a forged document.

As previously stated, the petition herein did not divide the case into two separate causes of action. The splitting of the case into two separately enumerated causes of action occurred at pretrial. The Court of Appeals opinion, 3 Kan. App. 2d at 538-39, recites the following:

"According to the record, the pretrial conference was held on August 25, 1975. The pretrial conference order, approved by counsel for the parties and signed by the trial judge, was not filed until the first day of trial, nineteen months later. In that order, it was recited that plaintiff made two claims against the defendants.

"The first claim was for compensatory damages for physical injury and property damage resulting from the automobile accident. On this first claim, plaintiff sought recovery from Wachter only. Plaintiff and Wachter each charged the other with certain violations of rules of the road.

"The second claim was sort of a mixed bag claim in that a mingling of negligence, malice, fraud and outrage was alleged. This second claim was stated as follows:

" 'The plaintiff charges the defendants Wachter and Emcasco Insurance Company with the following negligent, malicious, fraudulent and outrageous actions by and through their agents and/or employees:

" 'A. Forgery of plaintiff's signature to a release by defendants' agents;

" 'B. Reliance upon forged release;

" 'C. Failure to make a good faith investigation of plaintiff's allegations of forgery prior to suit;

" 'D. Fraud in lack of explanation of effect of Agreement and Release document which defendant Emcasco's employee and defendant Wachter's agent knew contained elements and consequences not orally explained to claimants with the further expectation that claimants would rely on said explanations of defendants' employee and/or agent and execute said document;

" 'E. Attempted reliance on void general release;

" 'F. Attempting to negotiate a settlement with and/or obtain a general release from an injured person within fifteen (15) days of an occurrence causing injury with the knowledge that the injured person was under the care of a physician.'

"Although it appears that by way of answer and at trial the defendants claimed reliance upon an oral release by plaintiff made during the December 27 or 28,

1973, conversation, no affirmative defenses to plaintiff's second claim are stated in the pretrial order.

"Three other observations concerning the pretrial order deserve mention. The sole issue identified for determination at trial was said to be whether employees of Scholfield were agents of plaintiff, defendants, or any of them, in the transactions concerning the repair of plaintiff's car and written release. There was no mention of punitive damages other than as may be arguably inherent in the quoted language of the order. There was no mention of questions of law to be decided in advance of or at trial."

Defendants moved for a directed verdict on Count 2 at the close of plaintiff's evidence and again at the close of all evidence. Both motions were denied. On appeal defendants claim error in the denial of these motions. In reviewing a motion for a directed verdict and/or a motion for judgment notwithstanding the verdict, the court must consider the evidence in a light most favorable to the opposing party. *Fisher v. Sears, Roebuck & Co.,* 207 Kan. 493, 485 P.2d 1309 (1971). The court does not weigh evidence but must accept as true all the facts which the evidence tends to prove and draw against the party making the motion all reasonable inferences most favorable to the party opposing the motion and if the evidence is of such character that reasonable men in an impartial exercise of their judgment may reach different conclusions, then the case should be submitted to the jury. *Lord v. Jackman,* 206 Kan. 22, 476 P.2d 596 (1970); *Springfield Tent & Awning Co. v. Rice,* 202 Kan. 234, 447 P.2d 833 (1968). The appellate court must do the same. *Hallett v. Stone,* 216 Kan. 568, 534 P.2d 232 (1975); *Apperson v. Security State Bank,* 215 Kan. 724, 528 P.2d 1211 (1974).

We have carefully reviewed the record and conclude the trial court erred in overruling the motions.

Plaintiff failed as a matter of law to establish even minimally that Scholfield was the agent of either defendant. The fact Emcasco suggested that plaintiff take her Pontiac to Scholfield Bros. Pontiac, Inc., for a repair estimate does not by itself establish agency. Indeed, plaintiff testified she was to secure an estimate from Scholfield and advise Emcasco of the amount. Repairs were subsequently authorized, based on the estimate. Likewise, the fact the draft and release were left with Scholfield for execution by plaintiff does not infer agency. Plaintiff, Emcasco, and Scholfield each had individual interests in the draft. The leaving of the documents was not shown to be anything other than a mutually

agreeable manner of solving a logistical problem for the convenience of all. The evidence showed such was a common practice among insurance companies.

One should also bear in mind that this was not a dispute between an insured and his insurer. Emcasco was attempting to settle with a third party (plaintiff) on behalf of its insured (Wachter). There are no contractual rights flowing between plaintiff and Emcasco absent a prior judgment against Wachter.

Plaintiff contends Emcasco relied on the forged release and failed to make a good faith investigation of plaintiff's allegations of forgery prior to suit. Emcasco had no reason to suspect the release until January, 1975, when plaintiff denied signing the release. Plaintiff wanted a copy of the release and Emcasco said the same would be sent to her attorney upon request. On February 21 the request was made and the release was sent on February 26. Emcasco heard nothing further until suit was filed. Actionable conduct? We think not.

Plaintiff also claims the failure of Scholfield employees or Brannon to explain the legal effect of the release to plaintiff was fraudulent. This is the release plaintiff never saw but which was forged by Stark. This is not a situation where plaintiff signed the release by virtue of misrepresentation. All parties agree plaintiff did not sign the release. Actionable conduct? We think not.

This brings us to the claims arising from the earlier oral release in contravention of K.S.A. 60-2801. The statute reads:

"(a) Within fifteen (15) days of the date of the occurrence causing injury to any person, who either is under the care of a person licensed to practice the healing arts, or is confined to a hospital or sanitarium as a patient, no person whose interest is or may become adverse to the injured person shall:

"(1) Negotiate or attempt to negotiate a settlement with the injured patient; or

"(2) obtain or attempt to obtain a general release of liability from the injured patient.

"(b) Any settlement agreement entered into, any general release of liability or any written statement made by any person who is under the care of a person licensed to practice the healing arts or is confined in a hospital or sanitarium after he or she incurs a personal injury, which is not obtained in accordance with the provisions of K.S.A. 60-2802, may be disavowed by the injured person within fifteen (15) days after discharge from the care of any person licensed to practice the healing arts or after release from the hospital or sanitarium, whichever occurs first, and such statement, release or settlement shall not be received in evidence in any court action relating to the injury."

The oral release was not asserted until after suit was filed. It is

unclear exactly at what point the matter of the oral release crept into the litigation and for what purpose it came in. Plaintiff consistently maintains no such oral release was given by her, but seeks to impose liability on Emcasco for relying on the release she maintains never existed. The Court of Appeals concluded that violation of K.S.A. 60-2801(*a*) does not give rise to a separate cause of action and we concur in that determination. Accordingly, it is unnecessary to explore the nuances of this claim.

We must conclude that the trial court erred in overruling defendants' motion for directed verdicts on Count 2. Having reached this result, we further conclude that remanding the case for a new trial on Count 2 would be inappropriate and that the defendants are entitled to judgment on Count 2.

The $55,000 judgment against Wachter in Count 1 is not an issue before us and stands undisturbed. As to Count 2, the judgments of the district court and the Court of Appeals are reversed. Judgment is entered in favor of defendants on Count 2. Costs are taxed to defendants. By virtue of the results reached herein, other issues raised need not be determined.

SCHROEDER, C.J., dissenting: I must respectfully dissent from the court's decision. In my opinion the facts and circumstances in this case require a reversal of the judgment of the trial court *in toto.* The errors are so thoroughly embedded in the entire proceedings that the granting of a new trial is the only solution.

HOLMES, J., concurring in part and dissenting in part: I concur with the majority in its opinion as to issues No. 1 and No. 2. However, I must respectfully dissent from the decision reached by the majority on issue No. 3. The factual issues and evidentiary matters involved in the determination of whether the trial court should have sustained motions by the defendants for a directed verdict on Count 2 are so conflicting that, in my opinion, the decision of the trial court and the Court of Appeals on that count should be reversed and the case remanded for a new trial as to Count 2 only.