No. 28,824.

T. W. Gardner, *Appellee,* v. Farmers State Bank, *Appellant* (Ronald Finney, Errol McCullough and W. C. Roberts, *Defendants*).

(278 Pac. 737.)

Opinion filed July 6, 1929.

W. H. Anderson, G. M. Lamer, both of Iola, and Gilbert H. Frith, of Emporia, for the appellant.

Charles H. Apt and Frederick G. Apt, both of Iola, for the appellee.

The opinion of the court was delivered by

Burch, J.: The action was one against a bank and certain of its officers, for conversion of funds deposited in the bank which were derived from a public sale of personal property belonging to plaintiff, made by plaintiff's former tenant. Judgment was rendered in favor of plaintiff and against the bank, and the bank appeals.

Roberts was Gardner's tenant for four years preceding January, 1926. The lease was of land and live stock furnished by Gardner, which for the last year included hogs. Gardner furnished brood sows, and Roberts was to raise corn to be fed to the live stock. Gardner was to receive certain shares of crops, get his original stock back, and the increase was to be divided. The tenancy came to an end, and landlord and tenant had a settlement. · There were one hundred head of hogs to be divided which were increase of the original stock and were raised on the farm. Roberts intended to have a public sale. Instead of dividing the hogs into two lots of fifty each and putting each lot in a separate pen, Roberts and Gardner agreed to sell the hogs at the sale, and Gardner's half of the proceeds was to be remitted to him. Roberts advertised the sale as his own, and the sale bills listed one hundred head of full-blood Duroc hogs. The sale was held on January 30, 1926. McCullough, assistant cashier of the defendant, the Farmers State Bank, was clerk of the sale. Payments for purchases were made in cash and by check to Roberts. McCullough took the proceeds of the sale to the bank and deposited them in Roberts' name. Later the bank applied the money on Roberts' indebtedness to the bank. The hogs sold for $1,289.24, and Gardner sued for his half of the money.

At the trial the first question was whether Roberts had any interest in the hogs. Roberts and Gardner told what their business relations were. When giving or renewing a note to the bank in December before the sale, Roberts signed a credit statement in which he said he owned one hundred head of hogs. The statement could not bind Gardner with respect to any interest he might have in the hogs which were sold, and the court permitted the statement to be read in evidence merely as affecting Roberts' credibility. The ruling was correct.

The credit statement said Roberts had no partners in his business "only on land with brother-in-law." Gardner was not related to Roberts. Defendant contended with Roberts while he was on the witness stand, and contended with the court, that Gardner and Roberts were partners in the hog business. The court ruled that the relation between Gardner and Roberts was that of landlord and tenant, and in defendant's brief complaint is made that defendant was not permitted to show Gardner and Roberts were partners. No rejected evidence of partnership called to the attention of the trial

court at the hearing on the motion for new trial is presented here. Whether there was a partnership depends on the description of the arrangement between Gardner and Roberts which they gave. From that description it appears the arrangement was the not infrequent one of lease of a stocked farm, a portion of the rental to consist of a portion of the stock increase. In such cases, due regard being had to the specific terms of the particular lease, the whole rent is regarded as issuing out of the land. (1 Tiffany, Landlord and Tenant, § 169-c.) Suppose, however, Gardner and Roberts were partners. The partnership was at an end, the partners had settled, they had agreed on manner of disposition of the hogs, as soon as the hogs were sold Gardner was entitled to half the proceeds, and whether the proceeds were derived from rent or were partnership profits, Gardner's share belonged to him. On the face of the record there is not the slightest doubt that half the money derived from sale of the hogs belonged to Gardner. In fact, there never was any substantial doubt about it, and the subject is closed.

The only other question of fact in the case of any importance was whether the bank had notice or knowledge that Gardner had an interest in the proceeds of the sale of the hogs. There was evidence pro and con, the jury found the bank knew of Gardner's interest in the hogs, and the finding was abundantly sustained by evidence. Defendant contends, however, the finding was induced by an erroneous instruction relating to notice. The court did give an instruction on the subject of notice which was too broad; but in two subsequent instructions the court clearly made liability of the bank depend on its knowledge of Gardner's interest, and on the whole record the court is unable to say that it affirmatively appears the instruction complained of prejudicially affected the bank's substantial rights. (R. S. 60-3317.)

Some hay and a farm implement attachment belonging to Gardner were sold at the sale, and the bank appropriated the proceeds along with the hog money. Roberts testified he told McCullough at the sale that half the hogs, the hay, and the attachment belonged to Gardner, and told the auctioneer at the time of sale that half the hogs, the hay, and the attachment belonged to Gardner. McCullough admitted he heard what was publicly said about the hay and the attachment, but testified he did not hear what was said about the hogs. The fact that Gardner owned the hay and the attachment was not disputed, and the court properly rendered judgment against

defendant for the proceeds of sale of the hay and attachment, without submitting to the jury the issues respecting them formally raised by the pleadings.

Defendant complains of remarks made by the court in the progress of the trial.

There were just two issues of fact in the case: Gardner's interest in the hogs, and the bank's innocence in appropriating the proceeds of sale of the hogs. The issues were simple and, as indicated, there was no sound basis for denial of Gardner's interest. Throughout the trial the court strove to confine the evidence to material things and get through with the case. Defendant's verified answer stated it had applied the money derived from the sale of live stock to payment of Roberts' notes. In the course of the trial the following occurred:

"By the Court: Then your verified statement here states that you applied the money realized from the sale of the live stock at the Roberts sale to the Roberts indebtedness at the defendant bank.

"By Mr. Lamer: Yes, sir; and we further say in that answer that we sold live stock. Now hogs—live stock isn't hogs exclusively. A great many things were sold at that sale in the way of live stock besides hogs; horses and cattle were sold at that sale. . . .

"By the Court: No, but you don't designate. You don't separate them in this answer.

"By Mr. Lamer: No, it is true I don't, but the court is trying to make hogs synonymous with live stock."

Near the close of the trial counsel for the bank returned to the subject, and the following occurred:

"By the Court: The witness testified as to what disposition was made of the proceeds, and your answer, verified, shows what he did with the proceeds from the sale.

"By Mr. Lamer: But, if the court please, Gardner doesn't say anything about live stock. He says hogs. Our answer speaks about the proceeds from the sale of live stock.

"By the Court: Oh, well, listen. You want to split hairs. Let's don't make a joke out of this. Anything further?"

Under the circumstances, this court is unable to say that the district court deserves judicial rebuke.

Assignments of error respecting other remarks of the district court, individual liability of officers of the bank against whom no judgment was rendered, and form of verdict, have been considered, and are held not to be well founded.

The judgment of the district court is affirmed.