No. 29,553.

G. T. KINSEY and MINNIE A. KINSEY, *Appellees*, v. THE FARMERS STATE BANK OF NEOSHO FALLS, *Appellant;* J. S. BALL, *Defendant.*

(297 Pac. 693.)

Opinion filed April 11, 1931.

*E. E. Lamb,* of Yates Center, for the appellant.

*F. J. Oyler* and *G. R. Gard,* both of Iola, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action for damages for the wrongful delivery of a deed placed in the bank in escrow. The jury returned a verdict for plaintiff for $825. The trial court required a remittitur to $500. This was accepted by the plaintiffs and judgment rendered for that amount against the bank, which has appealed.

The petition alleged in substance that plaintiffs were jointly the owners of certain described land, about 78 acres, in Greenwood county, the record title being in the name of the plaintiff, Minnie

A. Kinsey; that plaintiffs also were owners of certain oil and gas leases on land situated in Coffey county; that on June 28, 1926, plaintiffs entered into a written contract with the defendant, J. S. Ball, who was the owner of a drilling rig, whereby J. S. Ball, for the consideration named, agreed to drill a well for oil or gas on the Coffey county lease, "into the first break 55 feet of Mississippian lime, unless pay sands may be had at a lesser depth, approximate depth of 1,450 feet." Ball was to furnish labor, tools, rig, machinery, water and fuel, lay water line, and make all his own connections for the drilling of the well to the depth specified. Plaintiffs agreed to pay Ball $2.50 per lineal foot "when the well has reached the depth above specified, . . . but no part of the contract price for such drilling is payable, due or earned until said well is completed." The contract contained this provision:

"The approximate of the total sum involved in this contract, i. e., $3,500 shall be deposited in the form of purchase orders assigned to second party, or a deed in trust escrowed in the Farmers State Bank of Neosho Falls at Neosho Falls, Kan., subject to the completion of said well, in accordance with the terms and conditions of this contract, and held by said bank, subject to and to be delivered upon written consent of first party hereto or upon sufficient proof furnished by second party to said bank, that said well has been completed according to the terms of this contract, whereupon said bank is hereby authorized and directed to deliver to said second party the purchase orders or deed so deposited with it; second party hereby agrees to accept the same for their total amount in lieu of and as the same amount in cash. . . . Being further agreed, that the deed so deposited with bank shall be held until the necessary purchase slips may be had and deposited with bank, when it shall be taken down by G. T. Kinsey, first party."

The petition further alleges that plaintiffs executed a deed, blank as to grantee, for the Greenwood county land owned by them, and mailed the same to the defendant bank on June 30, 1926, with a letter written by G. T. Kinsey, stating:

"In accordance with one drilling contract, and agreement, made by me and Mr. J. S. Ball, of your city, I am herewith inclosing to you for your safe-keeping and escrowing with you and your bank, a warranty deed (in blank) until such a time I'm able to place with your bank some drilling contract, sales and assignments, of acreage in our drilling block of Coffey county; a copy of this drilling contract between myself and Mr. Ball shall be also placed with you, and to be a part of this letter of instructions with the deed as well until such time it is to be taken down by me."

The contract, deed and letter were received by the bank, and on July 1, 1926, the bank acknowledged the receipt of the deed "for safe-keeping." Plaintiffs alleged that J. S. Ball began the drilling

of a well on the lease in Coffey county and drilled it to a depth of about 400 feet, when he quit and drilled no more. Plaintiffs further alleged that about November 17, 1926, without the knowledge or consent of plaintiffs, the defendant bank, acting in concert with the defendant, J. S. Ball, for the purpose of cheating and defrauding plaintiffs out of their interest in the real estate described in the deed so deposited with the bank, in violation of the terms of the contract and letter of instructions, inserted the name of the defendant, J. S. Ball, as grantee in the deed, and the bank delivered the deed to Ball, who placed the same of record, by reason of which plaintiffs were damaged. The allegations of the petition are much more in detail than are here recited.

Defendant, J. S. Ball, answered, admitting the execution of the contract, and alleged that he drilled the well to the depth of 400 feet, at which time it was necessary to have casing, which plaintiff did not furnish, and by reason thereof he was unable to continue drilling, and that plaintiffs owed him $1,000 for the drilling done. He further admitted the deposit of the deed, as alleged by plaintiffs, but alleged that after the plaintiffs had failed to furnish casing they requested the bank to deliver the deed to him, and consented to such delivery, and further alleged that he had never realized anything from the farm, which was mortgaged; that he had been paid the sum of $80 by plaintiffs, and prayed judgment for $920.

The defendant bank answered with a verified general denial.

With the pleadings as above outlined the case went to trial. Plaintiffs offered evidence that they did not know the deed had been delivered by the bank to Ball until after the same had been recorded; that they had never requested such delivery nor consented thereto; that they then went to the bank and endeavored to ascertain why the deed had been delivered in violation of the contract and letter of instructions, but received no satisfactory explanation; that they endeavored to have Ball reconvey to them, but he refused to do so. In establishing their damages plaintiffs offered evidence that the Greenwood county land was encumbered by mortgages; that the holders of the mortgages foreclosed the same in a suit in Greenwood county in which plaintiffs were made parties defendant, and in which J. S. Ball was made a party defendant because of the fact that he held the record title to the land at the time the action was brought; that in the Greenwood county action plaintiffs had, by cross petition, alleged the circumstances under

which J. S. Ball obtained the record title to the land, and that the deed had been wrongfully delivered to him, and asked to have the deed set aside and their title quieted as against J. S. Ball; and in that action J. S. Ball, by cross petition, sought to recover from these plaintiffs for the drilling he had done on the well. Issues were joined on those questions in the Greenwood county suit and the trial court had determined that the deed had been wrongfully delivered to J. S. Ball and rendered judgment setting it aside and quieting the title of these plaintiffs as against J. S. Ball, and also found against Ball on his claim against these plaintiffs for the work he had done under the drilling contract, and rendered judgment accordingly. When this evidence was introduced at the trial of this case the trial court held this action could not proceed further as against Ball on the ground that these plaintiffs and Ball had had their day in court in the Greenwood county suit, which suit of necessity concluded, as between them, all rights and liabilities growing out of the drilling contract. The trial of this case proceeded as against the defendant bank, with the result as above stated.

Appellant first contends that plaintiffs in this action, having sued the bank and J. S. Ball as joint tort-feasors, and it having been shown by the evidence in the trial that plaintiffs and Ball were both parties defendants in the Greenwood county case and had cross claims against each other which were determined by the judgment of that court, plaintiffs cannot now maintain this action against the bank. We first observe, perhaps the bank and J. S. Ball should not have been charged as joint tort-feasors in this case for the reason that the basis of liability of the bank was for the wrongful delivery of the deed, irrespective of what Ball may have done with it after it was delivered to him, that being a matter which would go only to the measure of damages. But we shall not predicate our decision on this point for the reason it is not argued nor briefed. We next observe that the question of a former adjudication as against Ball was not raised by the pleadings in this case. As heretofore stated, the answer of J. S. Ball was that he was entitled to pay for the drilling done by him and a plea that the deed was delivered with the knowledge and consent and at the direction of plaintiffs, while the answer of the bank was simply a general denial. The only way this question got into this case was in the introduction of evidence of plaintiffs in proving their damages and the ruling of the trial court that because of the Greenwood county litigation no recovery

could be had in this case against J. S. Ball. Neither does it clearly appear that this specific question was ever presented to or passed upon by the trial court. Assuming, without deciding, that this state of the record authorizes appellant to present this question, we shall proceed to determine it.

It is, of course, the rule that joint tort-feasors are jointly and severally liable, and that one suffering damages may sue one or all of the joint tort-feasors. Further, it is the rule that if he sues and recovers from one of the joint tort-feasors, or if he settle with one of them for the tort, he cannot thereafter maintain an action against the other joint tort-feasors, for to do so would be to permit him to recover twice for the same tort. But the pleadings in the Greenwood county action did not involve a tort. That was a suit in equity to foreclose mortgages and to determine the rights of the parties with respect to the land involved. The plaintiffs here, by their cross petition against Ball in that action, sought to determine their title to the real property involved in that action as against Ball. They sought no damages against Ball for the wrongful delivery, or acceptance, or recording of the deed which had been placed by them in escrow in the defendant bank. Ball, by his cross petition against these plaintiffs, alleged that the deed had been delivered to him with the consent of these plaintiffs and in payment, or security, for the work he had already performed on the well. Those were the issues presented to the court in the Greenwood county case. The facts constituting the tort, with resulting damages, which formed the basis of this action, were not alleged in any of the pleadings in the Greenwood county case, and were not in fact there adjudicated. The defendant bank is situated in Woodson county and J. S. Ball resides in Woodson county. Had these plaintiffs, as cross petitioners in the Greenwood county suit, set up a cause of action against Ball and the bank for damages for the wrongful delivery of the deed, no doubt those parties would have contended that it was a separable controversy and a cause of action upon which, because of its nature, they were entitled to be sued in the county of their residence. Appellant recognizes this, but contends that since these plaintiffs and Ball were parties to that action, and did have cross petitions against each other, that the tort might have been pleaded and adjudicated in that case, and that the adjudication which was made in that case necessarily determined, as between these plaintiffs and J. S. Ball, all rights and liabilities, whether of

contract or of tort, then existing between them. Hence, it is argued by appellant that the adjudication did determine that there was no liability of J. S. Ball in favor of these plaintiffs on the tort which forms the basis of this action, notwithstanding the fact that such tort was not pleaded or otherwise referred to in that suit.

Appellant cites and relies on *Skaer v. Davidson*, 123 Kan. 420, 256 Pac. 155, and *Snehoda v. National Bank*, 115 Kan. 836, 840, 224 Pac. 914, and authorities there cited. In the Skaer case plaintiff and another had previously brought an action to recover damages from two of several wrongdoers on account of alleged false representations with reference to certain securities and other property. That action was settled by the defendants paying to plaintiff $4,500. Plaintiff then brought an action against others of the several wrongdoers for damages for the same alleged false representations with reference to the securities and other property. The court very properly held that the action could not be maintained. It should be noted that the same wrongdoing was made the basis for both of the actions for damages, the only difference being the parties defendant and perhaps some additional elements of damage in the second action. In the Snehoda case plaintiff sued to recover $2,400 she had paid to the bank upon an agreement that the bank would so dispose of the money as to cause to be paid to plaintiff's niece 400,000 kronen, Polish money, at Lemberg, in Galicia, Austrian Poland. Because of the war conditions in Poland and Russia there was necessarily delay in communicating with those countries. The person to whom delivery was to be made could not be found at first. It later developed plaintiff had advised her not to accept the remittance, perhaps because of the decline in the exchange value of Polish kronen. The trial court ruled plaintiff could not recover the sum sued for, but held this would not prevent a subsequent action between the same parties arising out of the same transaction for the value of the 400,000 kronen. This court reversed that ruling of the trial court, saying:

"It is a general rule of law, indeed an elementary one, that in a lawsuit between litigants in their ordinary capacity, so far as relates to a subsequent action on the same claim, not only is everything adjudicated between them which the parties may properly choose to litigate, but also everything incidental thereto which could have been litigated under the facts which gave rise to the cause of action. (Citing many cases.)" (p. 840.)

It should be noted that the remarks of this court related "to a

subsequent action on the same claim." It is obvious that neither of these cases is in point here, for the reason that the Greenwood county case was not for the same tort, nor on the same claim, which forms the basis of this action. The rule of law applicable to this situation is well stated in *Brinkerhoff v. Bank,* 109 Kan. 700, 205 Pac. 779, where it was held:

"A judgment is only conclusive between parties as to matters substantially in issue and actually litigated and does not conclude the parties as to everything incidentally brought into the controversy or as to matters immaterial to the subject matter in litigation." (Syl. ¶ 1.)

The opinion cites numerous authorities supporting the rule. As bearing on the question see, also, *Routh v. Finney County,* 84 Kan. 25, and *Hopper v. Nation,* 78 Kan. 198, 96 Pac. 77.

Appellant argues that its demurrer to plaintiff's evidence should have been sustained for the lack of competent evidence of damage, so far as it is based on the value of the Greenwood county land. The criticism of the evidence goes to its weight rather than its competency. It was the function of the jury and the trial court to weigh that evidence and, considering the part more favorable to plaintiff, it is amply sufficient to sustain the judgment.

Appellant complains of a misdescription of the Greenwood county land in plaintiffs' petition. There is what appears to be an inaccuracy in the description of part of the land in the petition, but it is obvious this misled no one at the trial. There was but one tract of Greenwood county land in controversy and but one deed left with the defendant bank.

Appellant complains of the exclusion of evidence of J. S. Ball as to money due him from plaintiffs because of the work he had done on the well in Coffey county. The court held that matter had been adjudicated in the Greenwood county case. Clearly the ruling was correct. Further than that, the point is not available to appellant for the reason that the record does not disclose that the evidence was brought into the record by affidavit or otherwise on the motion for a new trial. (R. S. 60-3004.)

Appellant complains of some remarks of the court. When the plaintiff G. T. Kinsey was called as a witness in rebuttal, defendant's counsel, in cross-examination, asked him: "Have you ever been adjudged insane?" or if he had ever been tried for insanity, and insisted on answers to his questions. The court asked counsel if he had any evidence to support such a charge, and counsel answered:

"I think I have." The witness answered, denying that he had ever been adjudged insane or tried for insanity, but that he had been arrested on two occasions, and gave a short statement of the reasons for the arrests and the results. Defendant offered no evidence that the witness had ever been adjudged insane or tried for insanity. Whereupon the court rebuked counsel for asking the question with no apparent foundation for doing so and took from the jury the remarks of the witness with respect to his arrest and the circumstances thereof. Appellant complains of that ruling. There is no reason for the complaint.

Finding no error in the record, the judgment of the court below is affirmed.

SLOAN, J., not participating.