No. 47,498

PLAINS TRANSPORT OF KANSAS, INC., and TRUCK INSURANCE EXCHANGE, *Appellants*, v. JOE C. BALDWIN and H. CLEMENTINE BALDWIN, d/b/a JOE BALDWIN GAS CO., *Appellees*.

(535 P. 2d 865)

Opinion filed May 10, 1975.

*Otto J. Koerner,* of Wichita, argued the cause and was on the brief for appellants.

*Edwin P. Carpenter*, of Topeka, and of the firm of Turner and Hensley, Chartered, of Great Bend, argued the cause, and *William A. Hensley* and *Raymond L. Dahlberg*, of the same firm, and *Bob H. Newton*, of Anthony, were with him on the brief for appellees.

The opinion of the court was delivered by

FATZER, C. J.: This is an appeal from a judgment in an action to recover damages to a tractor and tank trailer which were destroyed by fire while propane was being transferred from the transport to a bulk tank.

Joe C. Baldwin and H. Clementine Baldwin, d/b/a Joe Baldwin Gas Company, were the owners of a bulk propane plant at Anthony, Kansas, and are the defendant-appellees herein.

On May 28, 1969, at 4:30 p. m., Wilbert Thomsen, an employee of Groendyke Transport, Inc., arrived at the defendants' bulk plant for the purpose of delivering a load of propane. The tractor and tank trailer were leased to Groendyke Transport, Inc., by the owner-plaintiff, Plains Transport of Kansas, Inc., the appellant. Thomsen placed the tank trailer in a position that would allow him to unload the propane into the bulk tank.

In preparing the hook-up for unloading there are four connections to be made—one to the liquid outlet in the bottom of the tank trailer; one on the suction end of the trailer pump; one connecting the bulk tank fluid hose to the discharge end of the trailer pump, and one connecting the bulk tank vapor line hose to the trailer tank vapor line on the bottom of the tank. All of these connections are at least three feet under the trailer tank and in close proximity to each other. After making the connections, Thomsen got back in the truck and started the pump which would unload the liquid propane.

At this point there is a sharp conflict in the testimony. Thomsen testified that while he was in the cab of the truck making out logs and billings, an explosion occurred similar to those he had experienced before when liquid line hoses broke. When he heard the noise, the first thing he did was to turn off the switch on the truck. He was just getting out of the truck when another explosion occurred and the flames came.

A Mr. Swafford testified for the defendants. He was sitting in his backyard across the street east when the accident occurred. He testified:

"A. Well, it's just about 240 feet there to the big tank and I was sitting

facing the west in that chair watching him as I'd do usually when they came in to unload.

"Q. And did you hear any noise of any pounding of anything as you saw the arm swing but before the explosion occurred?

"A. No, sir, I did not.

"Q. And did an explosion occur immediately when the driver got to the vicinity of the place where the connection was made?

"A. Well, he got back in the truck there and when he started the motor up for his pump, it went to leaking there somewhere and he got right out and went around there to where it was leaking betwixt the truck and the big tank."

※    ※    ※    ※    ※

"Q. . . . Did he open the passenger side door and move anything from the truck before he went back and the explosion occurred?

"A. Well, he pulled in there like I said and came around on the south side. Then when he hooked up, he got back in that truck and started it up. Then he got back in from the south side. He didn't go back in around to the north side. He got in from the south side. Then as he started the motor up, she started leaking and spewing out loud that I could hear it over home there, and he got out and he reached back in the truck. He got out on the south side. He reached back in the truck and got something. I don't know what it could have been in his hand and he went around there to where it was leaking and it was leaking bad by then and he hit something or other. I don't know what he hit. I wouldn't say that for sure. And it blew up right there.

"Q. Is that when an explosion occurred for the first time?

"A. Yes, sir."

The instrument used was a brass hammer which does not cause a spark.

The fire burned extensively for 45-60 minutes. During that period, the fire was coming from underneath the transport tank, shooting in a southerly direction, and then curling over the top of the tank to the north from the effect of a southerly wind. After the 45-60 minute period, the Anthony fire department moved in to control the situation. They permitted the flame fed from the storage tank's vapor line to burn for about 19 hours for the purpose of bleeding all of the propane gas from the tank.

The case was tried to a jury and a verdict returned in favor of the defendants. The verdict was reduced to judgment and plaintiffs have appealed, raising numerous alleged trial errors.

The appellants first contend the district court erred in denying their motion to consolidate all cases pending before the court having common facts and arising out of the same transaction.

The Kansas Code of Civil Procedure (K. S. A. 60-242) provides that a judge may order a consolidation of actions for trial when

actions pending before the court involve a common question of law or fact. The statute uses the word "may," leaving the matter to the sound discretion of the district court. In *Schwartz v. Western Power & Gas Co., Inc.*, 208 Kan. 844, 494 P. 2d 1113, this court stated the purpose of the statute is to give broad discretion to decide how cases on the docket are to be tried. The consent of the parties is not required. It is for the court to weigh the saving of time and effort that consolidation would produce against any inconvenience, delay or expense that it would cause.

In the case before us, the district court determined that there were possible complicated issues of law to be raised which were not present in the other cases. It weighed the benefits and possible burdens and denied the motion to consolidate. We find nothing in the record to indicate the court abused its discretion.

It is next contended the district court erred, as a matter of law, in refusing to admit plaintiffs' exhibit No. 8—an inspection and certification record of appellants' tank equipment. The exhibit was styled National Tank Truck Carriers Suggested Report Form No. 2. The exhibit states: "This is not an official government report form." Contained in the form is space for the original test date and retest date. The retest date shows 10-68. The form is not signed but indicates no defects found.

The exhibit is reproduced in the record, but there is nothing to show it was ever offered in evidence, and if so, at what stage of the trial. The record shows no authentication of the writing as required. Neither does it show the court's reason for the refusal to admit the document, if it were offered. The record contains an instrument marked exhibit No. 8—there is no standard by which we can intelligently review the alleged error. Moreover, there is nothing to indicate where any prejudice could have affected the rights of the appellants. Thomsen testified that the excess-flow valves on the truck had been tested within a week or ten days prior to the incident and had been found in proper working condition. Furthermore, the oral testimony on the point was much more specific in detail than the exhibit. We hold the exclusion of exhibit No. 8, if it were offered, was immaterial error. (*Bowen v. City of La Harpe*, 89 Kan. 1, 129 Pac. 832.)

It is urged that the district court erred in refusing to submit four special questions requested by the appellants. The point is not well taken. Under the provisions of K. S. A. 60-249 (*b*) the trial judge is given discretionary powers in the area of special

questions. The only argument the appellants make is that the special questions requested were substantial questions dealing with disputed facts. Special questions may be submitted if they are of such a nature, but the discretionary power of the judge still remains. In *Thompson v. General Finance Co., Inc.,* 205 Kan. 76, 468 P. 2d 269, we held:

"Under K. S. A. 60-249 (*b*) the trial court is given discretionary powers in the area of special questions, and it may refuse to give special questions even though they relate to issues of fact raised by the pleadings or evidence in the case, absent a showing that the trial court abused its power of discretion." (Syl. ¶ 18.)

We hold the submission of special questions rests in the sound discretion of the district court. The appellants have failed to show any abuse of such discretion, and our examination of the record discloses none.

The appellants argue the district court erred in failing to give their requested instruction on requirements for safety pressure valves and excess flow valves.

The district court instructed the jury that safety requirements of the state of Kansas require that containers such as the appellants' tank trailer and the tank at the appellees' bulk plant, have safety pressure valves and excess flow valves in working condition. The appellants' requested instruction would only have added specific details as to what might make them work or keep them from working.

The court's instruction fairly informed the jury that the containers must have working safety and excess flow valves. It was not necessary to inform it as to all factors that would prevent them from working. Where the instructions properly advise the jury, the court need not give specific instructions requested. (*Novascone v. Knott,* 177 Kan. 86, 276 P. 2d 332.)

Plaintiffs assert it was "mandatory" that the district court instruct the jury with respect to either P. I. K. Civil 12.80 or P. I. K. Civil 12.81. The instruction contained in P. I. K. 12.80 is a statement of the doctrine of strict liability providing:

"When a person brings onto his property something which is harmless to others so long as it is confined to his property, but which is harmful if it should escape, he has a duty to prevent it from escaping and is legally responsible for any damage that ensues if he does not succeed in confining it to his own property, regardless of the care exercised."

We think the instruction was not applicable to the issues in the instant case. The plaintiffs did not plead nor try the issue of strict

liability. The instruction of P. I. K. 12.81 describes the duty of care owed by one in possession or control of an instrumentality exceptionally dangerous in character. The district court found the instruction inapplicable because the facts indicated the instrumentality was not being controlled by the defendants at the time of the accident, even if it were to be considered an exceptionally dangerous instrumentality.

The appellants next claim error because the district court refused to give its requested instruction which reads:

"The breach of a duty imposed by the statutory law or by State Fire Marshal rules and regulations constitute negligence per se (as a matter of law) and provide a basis for recovery of damages proximately resulting therefrom."

It would appear the instruction was not given because there was no substantial evidence that a breach of duty imposed by law or rule was the proximate cause of the accident. The cause of the fire was never disclosed.

The fact that a party violates a safety statute or rule will not make him liable for damages on the basis of negligence per se unless the violation is the proximate cause of the injury. (*Maust v. Ioerger*, 177 Kan. 558, 280 P. 2d 566; *Noland v. Sears Roebuck & Co.*, 207 Kan. 72, 483 P. 2d 1029, Syl. ¶ 2.)

The question of a violation of an administrative regulation being negligence per se is not squarely presented in the instant case. The plaintiffs did not plead a negligence-per-se cause of action, and the pretrial order does not reflect negligence per se was an issue. Neither did the plaintiffs try the case on a negligence-per-se theory, nor make a sufficient presentation for the trial judge to take cognizance of this negligence-per-se theory in that they did not introduce the regulations into evidence, and did not properly request judicial notice be taken of the regulation in compliance with K. S. A. 60-409 (c). Essentially, the district court had nothing before it which justified or required the giving of this instruction. The record discloses no error with respect to the instructions which would justify a reversal of the judgment.

The appellants contend the district court erred in not granting its motion for a new trial because of newly discovered evidence which it contends conclusively proved the defendants' hose connection prevented the closing of the vapor line excess-flow valves on both parties' equipment permitting the propane to sustain a continuous flow.

The appellants, in their motion for a new trial, presented no new

evidence which could not, with reasonable diligence, have been discovered before the trial.

After the trial, but before the argument on the motion for a new trial, the appellants employed a second expert who ran some tests on appellees' hose connection which was still attached to the vapor outlet on appellants' tank transport. It is these fittings which the appellants now contend were defective and prevented the closing of the excess-flow valves. Excess-flow valves are not affected by pressure but only by the rate of flow.

There was nothing disclosed which was not readily apparent before and during the trial of the action. If new trials are to be granted for failure to discover apparent evidence through lack of diligence, litigation might never end.

In *Sims v. Schrepel,* 208 Kan. 527, 492 P. 2d 1312, we held:

"A second claim of error must be noted. One of the grounds contained in plaintiff's motion for new trial was that of newly discovered evidence. The motion was supported by an affidavit executed by plaintiff's counsel to the effect that a witness had been discovered who farmed near the road where the accident occurred and who would testify that on many prior occasions he had seen defendant traveling north on the road at speeds of 100 miles or more. The court's refusal to grant a new trial on the basis of newly discovered evidence is assigned as error.

"This specification of error must be rejected. In the first place there was no showing that the evidence could not have been discovered with reasonable diligence in time to be used at the trial as required by K. S. A. (now 1971 Supp.) 60-259 (*a*), *Fifth.* In *State v. Leigh,* 166 Kan. 104, 199 P. 2d 504, this court said:

" 'The granting or denial of a motion for new trial on the ground of newly discovered evidence rests largely in the sound discretion of the trial court. It must first be shown to that court's satisfaction that such evidence could not with reasonable diligence have been produced at the trial. . . .' (p. 112.)

"See, also *State v. Collins,* 204 Kan. 55, 61, 460 P. 2d 573." (l. c. 530.)

Other alleged trial errors claimed to require the granting of a new trial are separately discussed herein.

We find no merit in the appellants' contention the district court erred in refusing to rule, as a matter of law, on the bailment issue raised before the trial. At the pretrial conference, the bailment question was not made a part of the stipulated facts. It was included in the issues to be established in the following language:

"Was there a bailment in effect between Plains Transport Co., Inc., as bailor, and Groendyke Co., Inc., as bailee, such that any negligence of Wilbert Thomsen would not be contributory negligence imputed to bar recovery herein?"

At the time the question was raised, counsel for the appellees insisted there were questions of fact, first, as to whether the Groendyke Transport Company and Plains Transport of Kansas, Inc., were anything more than alter egos set up for the purpose of having the title to the transport in someone other than the owner or the operator. During the trial, the district court determined as a matter of law there was a bailment and so instructed the jury. We find no reversible error.

The appellants next argue the district court erred in striking the doctrine of *res ipsa loquitur* from the petition and in overruling appellants' motion to include the doctrine as a theory of recovery in the case.

The doctrine of *res ipsa loquitur* is a rule of evidence and means, "The thing speaks for itself." It does nothing more than obligate the defendant to go forward with the evidence. One of the chief elements required for the doctrine to apply is that the instrumentality or thing causing the injury must have been within the exclusive control of the defendant. In *Vieyra v. Engineering Investment Co., Inc.*, 205 Kan. 775, 473 P. 2d 44, we held:

> "The doctrine of *res ipsa loquitor* does not apply when the instrumentality of the thing causing the injury is not within the exclusive control of the defendant." (Syl. ¶ 2.)

The appellants' transport tank contained propane gas. The appellees' storage tank contained some·propane gas. The driver of the transport truck moved into the fenced yard where the storage tank was located. He was the only person present. He located the transport tank and made the connections for pumping the propane gas into the storage tank. The driver, a man long experienced in handling propane gas, had complete control of the transport truck and its connections. He had such control over the storage tank as was necessary to make connections with the transport tank and release the valves for receiving the propane into the storage tank. Under the circumstances, we cannot say that the appellees had complete control over the tanks, the connections and facilities.

This court has read and reread the record consisting of 286 pages and has assiduously studied the briefs. We have concluded alleged trial errors such as permitting the appellees' counsel to pursue a line of questions concerning the "dieseling" effect of propane gas to cause a diesel engine to "run away"; of permitting counsel to examine the appellants' expert witness, Eldon Means, concerning a letter-report on the fire addressed to appellants' insurance carrier

found in the correspondence file; whether comments made by the district court in the presence of the jury affected the substantial rights of the appellants and was prejudicial to their right to a fair trial, and whether it was error in failing to separate the jury during recesses, resulting in misconduct of the jury in talking to the parties and witnesses during the recesses, have been examined and found to be without substantial merit. (See *Smith v. Union Pacific Railroad Co.*, 214 Kan. 128, 135, 519 P. 2d 1101.) We enter our caveat that no comment or remark should be made by a judge, during the trial of an action, which may tend to excite prejudice or hostility in the minds of the jurors toward one of the party-litigants, or sympathy for the other, but a mere possibility of prejudice from a remark of the judge is not sufficient to overturn a verdict or judgment, and, where a construction can properly and reasonably be given to a remark which will render it unobjectionable, it will not be regarded as prejudicial. (88 C. J. S., Trial, § 49, p. 124.) Moreover, the court advised the jury to disregard any comments it may have made, and instructions Nos. 3 and 7 warned the jury against considering such remarks in reaching its decision so as to preclude any possible prejudice. See, generally, *Fowler v. Shaw*, 119 Kan. 576, 591, 240 Pac. 970; *Howard v. Jones Store Co.*, 123 Kan. 620, 625, 627, 256 Pac. 1019; *Kinsey v. Farmers State Bank*, 132 Kan. 694, 700, 297 Pac. 693, and *Gardner v. Farmers State Bank*, 128 Kan. 603, 606, 278 Pac. 737.

Time and space require that this opinion be brought to an end. We have carefully considered all of the appellants' alleged trial errors, whether or not specifically covered herein, and find no errors which would justify the granting of a new trial.

The judgment is affirmed.

FROMME, J., not participating.