NOT DESIGNATED FOR PUBLICATION

No. 126,108

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JAMES PACZKOWSKI,
*Appellant*,

v.

GEFFREY DAWSON and DAWN DAWSON,
*Appellees*.

MEMORANDUM OPINION

Appeal from Wabaunsee District Court; JEFFREY R. ELDER, judge. Submitted without oral argument. Opinion filed July 5, 2024. Affirmed.

*Bryan W. Smith* and *Christine Caplinger*, of Smith Law Firm, of Topeka, for appellant.

*Norman R. Kelly* and *Anthony C. Hanks*, of Norton, Wasserman, Jones & Kelly, L.L.C., of Salina, for appellees.

Before SCHROEDER, P.J., ISHERWOOD and PICKERING, JJ.

PICKERING, J.:  This case involves a collision between a vehicle driven by James Paczkowski and a horse owned by Geffrey Dawson and Dawn Dawson. Paczkowski sued the Dawsons for negligence in constructing, maintaining, and repairing their fence. Paczkowski retained two experts who prepared reports opining that the Dawsons failed to keep the horse in a properly constructed and maintained enclosure. The Dawsons moved to exclude the experts' testimony and moved for summary judgment, claiming that Paczkowski could not establish a prima facie case that the Dawsons failed to exercise

1

ordinary care to keep the horse confined. The district court granted both motions in favor of the Dawsons. Having reviewed the record, we find no error and affirm.

PACZKOWSKI COLLIDES WITH DAWSON'S HORSE AND FILES SUIT

On the morning of October 30, 2018, Paczkowski was driving on K-99 highway in Wabaunsee County. As he drove to work, his vehicle collided with a horse standing in the two-lane road. Paczkowski sustained injuries and was transported by ambulance to Stormont Vail Hospital in Topeka. The horse was owned by the Dawsons, whose property ran along K-99 highway.

Dawson worked as a professional ranch manager, and during that time he spent two years professionally building fences. He had worked on the fence that confined the Dawsons' horse to the pasture. The horse had never escaped from the fenced pasture. Dawson stated that he tries to inspect the fence once a month but did not remember if he had been around the section of fence in question before the October 2018 collision.

The day after the collision Dawson inspected the fence surrounding the horse's pasture. In an affidavit, Dawson stated that in one area of the fencing, the top two wires of the five-wire barbed-wire fence were down and there was horsehair in the wire. In inspecting the fenced pasture, he concluded that the horse was likely running when she went through the fence because he noticed that horse manure was scattered about.

As result of Paczkowski's collision with the Dawsons' horse on the highway, Paczkowski filed a petition for damages. Paczkowski alleged that the Dawsons "breached their duty of care . . . by failing to properly construct, maintain, and repair their fence to prevent the horse from escaping [their] property." In support of his claim, Paczkowski identified two experts that he intended to call at trial:  Ed Brokesh, Ph.D., and Brent Sandgren.

2

Dr. Brokesh submitted a report stating that in July 2020 he inspected the site where the horse may have escaped and that he performed a second site inspection in October 2021. Dr. Brokesh opined that the Dawsons "exercised less than adequate care on their fences." He reported that he arrived at this opinion "after reviewing the deposition of Geffrey and Dawn Dawson, inspecting the fences on their property twice, and reviewing the pictures of the fences taken by [an insurance company representative] after the incident on October 30, 2018." His report also suggested the possibility that

"the horse . . . escaped from the pasture through a section of fence along the east side of the Dawson property that had been knocked down by some other animal. . . . It is very possible in the days or weeks before October 30, 2018, a deer attempted to run through or jump over the fence in the area where [the horse] is believed to have escaped. The impact of an animal running into and through the fence possibly broke the bottom wires, but more importantly, probably knocked the top wire off the post and into the pasture. Given the looseness of several of the fence wires during the site inspections, this top wire may not have been very tight and gave way from the post easily. . . . This impact could have happened several days or even weeks before October 30, 2018."

He further reported:

"Damage to the fence caused by a deer could have occurred shortly after Mr. Dawson inspected the fence, but days or weeks before the incident of October 30, 2018. With the top wire knocked loose and off the post sometime before the date of the incident, the horse . . . could have had many opportunities to get out of the pasture, possibly several times, leaving the amount of hair that can be seen on the fence in [photographs]."

Brent Sandgren submitted an expert report stating that he participated in a site inspection in October 2021. His opinion, in part, stated:

"Anyone with experience in fence building and horses could observe that the area where the [Dawsons] claim the horse escaped is not an area where the horse ran through the fence or jumped over the fence.

"It is most probable that this horse escaped through a gate that was not properly tied or shut. If the horse was in fact contained within the pasture according to the deposition testimony, then the gate to the east of the house would be the most likely exit point."

The Dawsons moved for summary judgment, asserting Paczkowski could not establish and had no admissible evidence to make a prima facie case that they had failed to exercise ordinary care to keep the horse confined.

Along with the summary judgment motion, the Dawsons moved to exclude the testimony and reports of Paczkowski's experts. The Dawsons stated that Dr. Brokesh "simply cannot draw conclusions about the reasonable confinement of the horse at the time of the incident based upon how the fence appears to be one and a half or three years after the incident." Further, the Dawsons alleged that Dr. Brokesh employed unreliable principles and methods.

Likewise, the Dawsons pointed out that Sandgren's opinions were based on his site visit about three years after the collision. The Dawsons alleged that "Sandgren cannot reach reliable conclusions regarding the conditions of the fence at the time of the accident by using facts and data collected approximately three years after the incident." The Dawsons referred to Sandgren's opinion as "[w]ild speculation."

The district court considered both motions at the time of the pretrial hearing in October 2022. On the day of the pretrial hearing, Paczkowski moved to continue the hearing to a later time when there would be sufficient time to present testimony from his experts for consideration of the Dawsons' motions. One of the experts also was unavailable due to an injury.

4

At the hearing, Paczkowski argued that the entire matter should be continued to present the expert testimony and thus "fully and fairly" conduct the hearing. The Dawsons objected to the request for continuance. The district court denied Paczkowski's motion for continuance as "not timely filed" as the motion was raised the day of the hearing. The district court considered counsels' arguments on the Dawsons' motion with references to the expert reports but without expert testimony. At the conclusion of the hearing, the district court took the matter under advisement.

In November 2022, the district court held a hearing to formally rule on the Dawsons' motions. The court stated on the record:

"The Court finds that the motion filed by the [Dawsons] to exclude the testimony of [Paczkowski's] expert is granted for the reasons set forth in the motion. I find that there [are] insufficient facts or data upon which the experts could render their opinions, and that their opinions two and a half years after the fact are unreliable. Factually mirrored, while an [unpublished] opinion is not to be followed, the facts in this case are fairly close to that, and I just simply agree with the rationale of the [Dawsons] in their motion. Given the fact that [Paczkowski's] experts' testimony is excluded for the reasons set forth in the [Dawsons'] motion, without expert testimony to support their claims, then, for that reason, the [Dawsons'] Motion For Summary Judgment is likewise granted."

Paczkowski appeals.

I.      *The District Court Did Not Err in Denying a Motion to Continue the Pretrial Conference for a* Daubert *Hearing*

*Standard of Review*

"Our standard of review on motions for a continuance is well-settled: the district court's ruling will not be disturbed absent an abuse of discretion. 'Judicial discretion is abused only when no reasonable person would take the view adopted by the trial court.' [Citation omitted.]" *Miller v. Glacier Development Co.*, 284 Kan. 476, 493, 161 P.3d 730 (2007).

*Paczkowski argues that a* Daubert *evidentiary hearing is mandated.*

On appeal, Paczkowski challenges the district court's denial of his motion to continue. Specifically, his first issue states that the district court "erred in denying plaintiff's motion to continue the pretrial conference for the purpose of conducting a Daubert hearing to hear testimony of Plaintiff's expert." See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-94, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Paczkowski argues that the district court did not perform its gatekeeper role because it did not hear testimony from his expert witnesses before ruling to exclude their testimony from trial. He contends that the court "did not follow the requirement of K.S.A. 60-456(b)."

Paczkowski appears to argue that K.S.A. 2023 Supp. 60-456(b) and K.S.A. 2023 Supp. 60-457(b) require a full evidentiary hearing with testimonial evidence from the parties' proposed expert before the district court can rule on the admissibility of their

testimony for trial purposes. Thus, Paczkowski claims, the district court erred in denying the motion to continue.

K.S.A. 2023 Supp. 60-456(b) states:

"If scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise if: (1) The testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has reliably applied the principles and methods to the facts of the case."

K.S.A. 2023 Supp. 60-457(b) states:

"If a witness is testifying as an expert, upon motion of a party, the court may hold a pretrial hearing to determine whether the witness qualifies as an expert and whether the witness's testimony satisfies the requirements of subsection (b) of K.S.A. 60-456, and amendments thereto. The court shall allow sufficient time for a hearing. The court shall rule on the qualifications of the witness to testify as an expert and whether or not the testimony satisfies the requirements of subsection (b) of K.S.A. 60-456, and amendments thereto. Such hearing and ruling shall be completed no later than the final pretrial conference contemplated under subsection (d) of K.S.A. 60-216, and amendments thereto."

On appeal, Paczkowski contends that the district court "*shall* conduct the hearing to determine if the witness qualifies as an expert and whether the witness's testimony satisfies the requirements of K.S.A 60-456(b)." This is contrary to K.S.A. 2023 Supp. 60-457(b), which specifically states that "the court *may* hold a pretrial hearing to determine whether the witness qualifies as an expert and whether the witness's testimony satisfies the requirements of subsection (b) of K.S.A. 60-456." (Emphasis added.)

7

Contrary to Paczkowski's assertion that a *Daubert* evidentiary hearing was required, K.S.A. 60-457(b) does not mandate an evidentiary hearing. "The Kansas Supreme Court has stated that the word 'may' typically indicates a discretionary decision for the trial court." *Jordan v. Jordan*, 47 Kan. App. 2d 300, 305, 274 P.3d 657 (2012); see *Plains Transport of Kansas, Inc. v. Baldwin*, 217 Kan. 2, 5, 535 P.2d 865 (1975) ("The statute uses the word 'may,' leaving the matter to the sound discretion of the district court."). The Legislature did not choose to use the word "shall"; thus, the statute does not dictate that a district court "shall" hold a pretrial *Daubert* hearing. While this statute provides the district court with statutory authority to hold a *Daubert* hearing, the court is not mandated to do so.

Along with the statutory provision, our Supreme Court has held that *Daubert* hearings are "'not specifically mandated.'" *State v. Aguirre*, 313 Kan. 189, 205, 485 P.3d 576 (2021). The *Aguirre* court cited to *Goebel v. Denver and Rio Grande Western R.R. Co.*, 215 F.3d 1083 (10th Cir. 2000), noting that "while a *Daubert* hearing is '[t]he most common method for fulfilling' a district court's gatekeeping function, it 'is not specifically mandated.' 215 F.3d at 1087." *Aguirre*, 313 Kan. at 205; see also *United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997) (noting that *Daubert* does not require a hearing). The Tenth Circuit Court of Appeals has explained that "'[t]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.' 526 U.S. at 152." *United States v. Nacchio*, 555 F.3d 1234, 1245 (10th Cir. 2009). The *Nacchio* Court also held that a party has "no entitlement to a particular method of gatekeeping by the district court." 555 F.3d at 1245.

For further support, Paczkowski cites to *Smart v. BNSF Railway Co.*, 52 Kan. App. 2d 486, 369 P.3d 966 (2016), as an example of a case in which the trial court had before it the testimony of the expert witness. But upon review, the *Smart* court only had deposition testimony and the expert's report on which to base its decision to exclude the testimony of the expert at trial. Nothing in that case suggests that there must be a full

8

evidentiary hearing on the motion to exclude. Nor does the case discuss a continuance motion that might favor Paczkowski's argument.

In arguing that the district court did not abuse its discretion in denying the continuance, the Dawsons point to the submitted expert reports, which are required under K.S.A. 2023 Supp. 60-226(b)(6)(A)(ii). Under this statute, a party is required to disclose the proposed expert's written reports. Specifically, the report's disclosure should provide the "substance of the facts and opinions to which the expert is expected to testify."

Mindful that the district court's denial of a motion to continue for a *Daubert* hearing is reviewed under an abuse of discretion, we cannot find that no reasonable person would agree with the court's ruling. *Miller*, 284 Kan. at 493. The denial of the motion to continue due to being untimely was not an abuse of discretion. The district court therefore did not err in denying the motion to continue.

II.     *There Was No Error in the District Court's Exclusion of Paczkowski's Experts' Testimony*

On appeal, Paczkowski argues that the district court erred by excluding witnesses who would provide an expert opinion that the Dawsons failed to keep the horse in a properly constructed and maintained enclosure. He disputes the court's ruling that the reports were unreliable.

*Standard of Review*

Appellate courts review admission or exclusion of expert testimony under K.S.A. 2023 Supp. 60-456 for abuse of discretion. *In re Care & Treatment of Cone*, 309 Kan. 321, 325, 435 P.3d 45 (2019). Appellate courts review the district court's performance of its gatekeeper role in its decision to admit or exclude the testimony for abuse of

9

discretion. *Smart*, 52 Kan. App. 2d 486, Syl. ¶ 6. A party asserting an abuse of discretion has the burden of showing such abuse. See *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 466, 509 P.3d 1211 (2022).

*District court's broad discretion in admitting a qualified expert*

A district court has the discretion to admit a qualified expert to testify on subjects involving specialized knowledge if such testimony assists the trier of fact in either understanding the evidence presented at trial or in resolving an issue of fact. To determine if an expert is qualified, the district court should look at such things as the witness' knowledge, training, or education. Likewise, the district court must determine if the proposed testimony is founded on sufficient information, based on reliable methods as applied to the facts of the particular case. *Smart*, 52 Kan. App. 2d 486, Syl. ¶ 7.

As previously indicated, K.S.A. 2023 Supp. 60-456(b) allows a qualified expert witness to testify regarding "scientific, technical or other specialized knowledge" when that testimony will help the trier of fact evaluate the evidence. When determining whether a witness' proposed testimony constitutes admissible expert opinion testimony under K.S.A. 2023 Supp. 60-456(b), courts look to the *Daubert* factors. The *Daubert* factors involve a deeper analysis of a party's proposed expert witness' testimony. Specifically, the nonexclusive list of *Daubert* factors is as follows:

> "(1) whether the theory or technique can be (and has been) tested; (2) whether it has been subject to peer review and publication; (3) whether, in respect to a particular technique, there is a high known or potential rate of error and whether there are standards controlling the technique's operation; and (4) whether the theory or technique has general acceptance within a relevant scientific community." *State v. Lyman*, 311 Kan. 1, 22, 455 P.3d 393 (2020).

A district court may look to these factors in examining reliability of the principles and methods used by an expert witness in rendering his or her opinions. Depending on the specific facts and issues presented, a district court may expand the *Daubert* inquiry to cover expert testimony that is not purely scientific in nature, such as the expert's personal knowledge or experience. See *Kumho Tire v. Carmichael*, 526 U.S. 137, 150, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999); *Smart*, 52 Kan. App. 2d at 495-96. "'[T]he district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony.'" *Nacchio*, 555 F.3d at 1241. "[I]f the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology." 555 F.3d at 1241.

*A district court has broad latitude in determining reliability*

A district court has "the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire*, 526 U.S. at 142. The *Kumho* Court further explained: "The trial court must have [discretionary] latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability." 526 U.S. at 152.

In ruling on the reliability of the challenged expert testimony, another panel of this court has previously found: "The purpose of the reliability determination is not to decide whether the expert's conclusions are correct but whether the analysis used to reach them is reliable." *Smart*, 52 Kan. App. 2d at 495. In *Smart*, the district court struck the expert's opinions because his testimony did not meet Kansas' standards for admissibility and would not be helpful to the jury. The expert's testimony only offered some speculation on whether BNSF was negligent and thus liable for Smart's injuries. The *Smart* panel agreed that the expert's opinions were conclusory and lacked reliability, holding that the district

11

court did not abuse its discretion in excluding the expert's opinion. 52 Kan. App. 2d at 500.

Additionally, in determining reliability, our Supreme Court has stated that "expert testimony must be based on reasonably accurate data and not simply based on an unsupported assumption, theoretical speculation, or conclusory allegations." *Olathe Mfg., Inc. v. Browning Mfg.*, 259 Kan. 735, 767, 915 P.2d 86 (1996).

In following K.S.A. 2023 Supp. 60-456(b) and determining whether the proposed expert's findings were "based on sufficient facts or data," were "the product of reliable principles and methods," and whether "the witness has reliably applied the principles and methods to the facts of the case," the district court here essentially found both experts' proposed testimony lacking in these regards.

Further, the burden to show reliability and relevance was Paczkowski's. See *Lyman*, 311 Kan. at 23; see *Daubert*, 43 F.3d at 1316 ("[T]he party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology."). Additionally, the record shows that the district court had conducted a *Daubert* analysis. Compare with *Goebel*, 215 F.3d at 1088 (reversing district court's ruling when "[t]here is not a single explicit statement on the record to indicate that the district court ever conducted any form of *Daubert* analysis whatsoever.").

Here, neither expert's report states that his theory has been tested, whether his theory has been subject to peer review and publication, the potential rate of error associated with his theory, or whether his theory is generally accepted. The experts appear to be relying solely on their experience. And neither party asserts otherwise. As the *Smart* panel noted: "'To the extent a witness is relying primarily on experience, he or she "must explain how that experience leads to the conclusion reached, why that

12

experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'"' 52 Kan. App. 2d at 495.

Paczkowski fails to address the district court's ruling that his experts' testimony was not reliable. He does not argue that his experts' experience led to their conclusions or why their experience was sufficient to reach the opinions reached. Instead, he claims that Dawson's concerns are that of "weight and credibility" and not that of admissibility. And he fails to cite any authority to buttress his assertion that this issue is not one of admissibility, but rather of weight and credibility.

The Dawsons argue that this case is similar to *Wilson ex rel. Estate of Rice v. McDaniel*, No. 109,898, 2014 WL 3019946 (Kan. App. 2014) (unpublished opinion). There, the plaintiff sought damages against the owners of a mule that had escaped its fencing, wandered onto the highway, and was struck by a car in which the plaintiff was a passenger. The plaintiff presented an expert's opinion, based on the condition of the fence two years after the injury. The *Wilson* panel upheld a finding of summary judgment for the defendants: "The opinion of [the passenger's] expert witness cannot save her claims because that opinion was not based on the condition of the corral at the time of the accident." 2014 WL 3019946, at *9.

That is exactly the situation here. The experts hired by Paczkowski inspected the site one and a half and three years after the incident, and any conclusions they reached are pure speculation. The district court did not err in excluding the experts' testimony.

III.    *The District Court Did Not Err in Granting Summary Judgment to the Dawsons*

*Standard of Review*

> "Summary judgment is appropriate when the pleadings, depositions, answers to
> interrogatories, admissions on file, and supporting affidavits show that no genuine issue
> exists as to any material fact and the moving party is entitled to judgment as a matter of
> law. The district court must resolve all facts and reasonable inferences drawn from the
> evidence in favor of the party against whom the ruling is sought. When opposing
> summary judgment, a party must produce evidence to establish a dispute as to a material
> fact. In order to preclude summary judgment, the facts subject to the dispute must be
> material to the conclusive issue in the case. Appellate courts apply the same rules and,
> where they find reasonable minds could differ as to the conclusions drawn from the
> evidence, summary judgment is inappropriate. Appellate review of the legal effect of
> undisputed facts is de novo." *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82,
> 453 P.3d 304 (2019).

Appellate courts review the district court's denial of a motion for summary judgment de novo, viewing the facts in the light most favorable to the party opposing summary judgment. *John Doe v. M.J.*, 315 Kan. 310, 313, 508 P.3d 368 (2022).

Summary judgment is rarely appropriate in negligence cases, unless a plaintiff fails to establishes a prima facie case demonstrating the existence of the four elements of negligence:  "existence of a duty, a breach of that duty, an injury, and proximate cause." *Montgomery v. Saleh*, 311 Kan. 649, 653, 466 P.3d 902 (2020). When a plaintiff fails to establish a prima facie case of negligence, summary judgment is proper. *Kuxhausen v. Tillman Partners*, 40 Kan. App. 2d 930, 944-45, 197 P.3d 859 (2008).

*Discussion*

The Dawsons moved for summary judgment, alleging that Paczkowski could not establish and had no admissible evidence to make a prima facie case that the Dawsons failed to exercise ordinary care to keep the horse confined. The district court ruled on the motion: "Given the fact that [Paczkowski's] experts' testimony is excluded for the reasons set forth in the [Dawsons'] motion, without expert testimony to support their claims, then, for that reason, the [Dawsons'] Motion For Summary Judgment is likewise granted."

Paczkowski argues only that if we reverse either of the preceding issues, then we should also reverse the grant of summary judgment to the Dawsons. He does not come forward with any material facts in dispute. To survive the Dawsons' motion for summary judgment, Paczkowski must provide evidence to establish a prima facie case of negligence in the failure to contain the horse.

In *Kuxhausen*, Kuxhausen filed a petition against Tillman Partners for negligence due to her exposure to paint fumes. The district court ruled that Kuxhausen did not have viable claim for negligence because she had not presented admissible expert-opinion evidence that she suffered from multiple-chemical sensitivity or that her long-term symptoms were caused by exposure to paint fumes. In the absence of such evidence, the court held that Kuxhausen did not have a viable claim for negligence. The *Kuxhausen* panel agreed, ruling that the district court properly granted summary judgment to the defendant. 40 Kan. App. 2d at 944-45.

And in the often-cited *Smart*, the district court had excluded Smart's expert witness. As such, without the expert opinion, Smart was unable to prove his negligence claim, and the panel of this court affirmed the district court's grant of summary judgment. 52 Kan. App. 2d at 495.

15

Likewise, here, without the experts' opinions, Paczkowski is unable to provide evidence that proves negligence by the Dawsons. Paczkowski can only prove that the horse left her enclosure and wandered out onto the highway. The opinions of Paczkowski's experts cannot save his claim because they were not based on the condition of the fence at the time of the injury. Therefore, the district court did not err when it granted summary judgment for the Dawsons.

Affirmed.